58585. BUTTS et al. v. ATLANTA FEDERAL SAVINGS & LOAN ASSOCIATION.

Deen, Chief Judge.

This is a suit for damages. The plaintiffs, husband and wife, purchased a lot and on January 28, 1972, contracted with a builder for the construction of a house. Under the terms of the contract the house was to be completed within ninety days. Plaintiffs obtained a construction loan in the amount of $27,500 from Atlanta Federal Savings & Loan Association on February 16, 1972. In September of 1972, plaintiffs filed suit against the contractor because they were dissatisfied with his work. The contractor then filed a petition in bankruptcy. Plaintiffs brought this suit against Atlanta Federal alleging that the association held the loan proceeds in trust and under the terms of the loan contract was required to disburse them to the contractor only upon order of the plaintiffs with the approval of the association, and that Atlanta Federal paid out funds to the contractor without their approval or the asociation's inspection for work that had not been completed or had been poorly

performed. Atlanta Federal answered claiming that the funds were disbursed only upon authorization of one or both of the plaintiffs and that the contract entered into between the parties did not impose the obligations alleged. The plaintiffs bring this appeal following the trial court's grant of Atlanta Federal's motion for summary judgment. *Held:*

The record shows that under the construction loan agreement the plaintiffs agreed to have the house completed in accordance with the plans and specifications submitted to the lender, that no change would be made in the building without written approval and that the lender was ". . . authorized to disburse the proceeds of said loan during the course of construction as work progresses and as approved by your inspector." The record also contains twelve disbursement requests signed by the contractor and one or both of the plaintiffs. The majority of them are notarized and state that the ". . . undersigned owner has personally inspected and accepts the above item." Atlanta Federal made eighteen inspections before disbursements to the contractor were stopped at the plaintiffs' request.

The Butts' claim that at the time they applied for the loan, they spoke with Atlanta Federal's vice-president and he told them that all work would be checked and approved for good workmanship before any funds were disbursed, and that they were advised by a bank official that they could sign some of the loan disbursements in blank in order to avoid a trip to the bank each time a request was made. In her deposition, Mrs. Butts, however, admits that only the first three of the twelve requests were signed in blank and that either she or her husband signed the remainder as they were presented by the contractor.

Any oral promises made by Atlanta Federal's vice-president prior to the signing of the loan agreement constitutes parol evidence and is ". . . inadmissible to add to, take from, or vary a written contract." Code Ann. § 20-704(1). Plaintiffs are estopped to claim that a bank employee's assurance that they could sign the requests in blank enabled them to rely upon the bank's inspection when the record shows that only the first three were executed in blank, that all of them recited that they had

personally inspected and accepted the work, and the plaintiffs admitted that they personally inspected the contractor's work about twice a week. See Blackwell v. Midland Federal Savings & Loan Assn., 284 P2d 1060 (1955). If a writing is signed with blanks left to be filled in by the other party, the person signing is bound by it. *State Hwy. Dept. v. Raines,* 129 Ga. App. 123 (199 SE2d 96) (1973). Therefore, the sole issue in this case is whether the association's inspection, as provided in the contract, was for the benefit of Atlanta Federal. As this is a question of first impression in Georgia, we will examine cases from other jurisdictions.

It appears that the liability of a financing authority to the home purchaser for construction defects has only been rarely imposed. Annot. 39 ALR3d 247. In Connor v. Great Western Savings & Loan Assn., 73 Cal. Rptr. 369 (1968), the association was held to be under a duty of reasonable care to protect the buyers from damages caused by major structural defects because of the closely connected business relationship between the lender and the developer which Great Western had voluntarily assumed. In the absence of such a close relationship, the lender has no legal duty to protect purchasers from construction defects when the association's financing activity does not extend beyond that of a conventional construction lender. Bradler v. Craig, 79 Cal. Rptr. 401 (1969). Even if an inspection fee is deducted from the loan proceeds, an action for damages based upon the theory of implied contract does not lie because the inspection is not made for the benefit of the buyers. " 'A lender of construction money has an interest in the progress and quality of the construction of its security proportional to the amount of money invested and would reasonably be expected to inspect the construction and be entitled to additional compensation for its additional costs in making such inspection.' " Rice v. First Federal Savings & Loan Assn., 207 S2d 22 (1968).

". . . [C]onstruction inspection procedures are designed primarily as 'work-in-place' inspections in order to see to it that loan funds are being used by the builder on the particular site being financed and that they are not being diverted for other purposes. This is not to say that

the construction lender has no interest in having the homes constructed so as to be free from defects. It *does* have such an interest and if it does discover construction defects during the course of periodic inspections it can and *should* use its financial power of withholding construction loan payments in order to make sure that the defects are remedied. The point is, however, that quality control is *not* the primary purpose of the construction lender's inspection . . . In view of the fact that savings and loan associations do not have the specialized, technical competence to act as builders, and since they do not function as such or represent to potential home purchasers that they do, it seems unreasonable to hold them to a duty, the fulfillment of which not only would require them to acquire such competence but also would force them to share this function with the builders whom they finance. Imposing such a duty not only would require savings associations to hire high priced specialists in order to assure that they would be able to perform it, but since associations would be duplicating the primary function of the builder-vendor, the cost of tract financing would be increased substantially and unnecessarily and such cost, of course, ultimately would be passed on to the home purchaser." Pfeiler, Construction Lending and Products Liability, The Business Lawyer 1309, 1321-1323 (1970). It would appear that these reasons would also apply to a situation in which the lender makes a construction loan to the home buyer and does not have any dealings with the contractor. In the present case, there is no evidence that there was any business relationship between the contractor and the association and the plaintiffs have not alleged that the lender knew of the defects in the house. Indeed, the record shows that when the plaintiffs discovered serious defects and requested Atlanta Federal to stop future disbursements to the contractor, it complied with the request.

As the contract forbids changes in the plans for the construction of the house without the association's approval and requires the plaintiffs to approve the contractor's work before authorizing disbursement from their escrow account, we fail to see how the bank's final approval before disbursing funds could be construed to

imply that the lender's inspection was for their benefit. 12 USCA § 1464(c) permits savings and loan associations to lend construction funds only upon the taking of a security interest. The primary duty of a federal savings and loan association is to protect the assets of its members and depositors; it does not insure the assets of its borrowers. *Shaw v. Cook County Federal Savings & Loan Assn.,* 139 Ga. App. 419 (228 SE2d 326) (1976).

*Judgment affirmed. Shulman and Carley, JJ., concur.*

SUBMITTED OCTOBER 2, 1979 — DECIDED OCTOBER 24, 1979.

*Joe W. Cook,* for appellants.
*Paul H. Anderson, Paul H. Anderson, Jr.,* for appellee.

*Judgment affirmed. Shulman and Carley, JJ., concur.*