# 68154. JORDAN et al. v. ATLANTA NEIGHBORHOOD HOUSING SERVICES, INC.

SOGNIER, Judge.

Samuel S. Jordan and his wife Gladys Jordan sued Atlanta Neighborhood Housing Services, Inc. (NHS) for damages arising from construction defects in the renovation of their home. The Jordans had obtained a low-interest loan from NHS, a nonprofit corporation offering home rehabilitation loans for persons ineligible for conventional financing. The loan proceeds were used to pay off an existing mortgage and past due property taxes and to make certain repairs on the Jordans' home. NHS prepared an estimate for the renovation and sent it out for bids. Subsequently, the Jordans contracted with Warner Brothers Construction Company which performed certain renovation work. Payments were made to the contractor as work progressed which were authorized by Mr. Jordan on payment release forms. NHS' representative, Paul Buechele, visited the site frequently during the course of the construction and was present at the times Mr. Jordan approved the partial progress and final payments. The contractor subsequently went out of business.

The Jordans became delinquent on their payments to NHS, foreclosure was initiated, and NHS purchased the property at the foreclosure sale. NHS brought dispossessory proceedings against the Jordans, who appealed unsuccessfully from the granting of a writ of possession to NHS. *Jordan v. Atlanta Neighborhood Housing Services*, 169 Ga. App. 600 (313 SE2d 787) (1984). In the instant action, the trial court granted NHS' motion for summary judgment and the Jordans appeal.

1. Appellants contend that the trial court erred by granting summary judgment in favor of appellee because appellee owed them a legal and contractual duty which it breached by negligence in inspecting the renovation and approving disbursement of funds to the contractor. While it is clear from the documents in the record that there was no duty created expressly by contract, appellants argue that there was an implied contract between themselves and NHS regarding disbursement of loan proceeds from an escrow account and that NHS was under a duty to exercise reasonable care in the performance of inspection services which it understood would be relied on and used by appellants.

Ordinarily an action for damages by a homeowner or purchaser against a lender or financing authority will not lie because the lender's inspection is normally not made for the benefit of the homeowner but is made instead for the protection and benefit of the lender. *Butts v. Atlanta Fed. &c. Assn.*, 152 Ga. App. 40, 42 (262 SE2d 230) (1979). However, an exception has been recognized "when

the [lender's] financing activity . . . extend[s] beyond that of a conventional construction lender. [Cit.]" Id. Then a legal duty may arise on the part of the lender to protect the homeowner from damages caused by construction defects. Id.

Samuel Jordan stated in his affidavit that NHS made the initial contact with him about renovations, prepared the list of improvements, solicited the bids by the contractors, and monitored the construction. In weekly meetings with NHS' representative, Buechele, Jordan noted deficiencies in the contractor's work but was assured by Buechele that the work was progressing satisfactorily and that the items complained of would be taken care of in due time. Regarding his signature on the forms approving progress payments, Jordan stated: "At the time I signed them, I was told by Mr. Buechele that it would be necessary for me to sign these to keep the contractor working on the project and in order to make the corrections I requested."

Jordan stated that he knew nothing about contracting, looked to Buechele to assure proper performance of the work, and did so with Buechele's knowledge. The evidence discloses that Buechele possessed some specialized, technical competence in home renovation, knew of construction defects in the course of the renovation, and was aware that the quality of the overall renovation was necessarily subject to very tight financial limitations imposed by the size of the renovation loan. Buechele admitted in his deposition testimony that in addition to inspecting the work in order to protect NHS' investment, he also made his inspections "in response to . . . concerns from the homeowner about the work . . . ."

According to Jordan, the defects brought to Buechele's attention and existing at the time of the final disbursement included the following: the roof leaked; the front porch sagged; air from out-of-doors flowed into the house through the kitchen cabinets; some electrical wiring inside the house was exposed; and the bathroom fixtures were improperly installed and burst due to freezing.

" 'To entitle the defendant [NHS] to a summary judgment the undisputed facts as disclosed by the pleadings and evidence must negate at least one essential element entitling plaintiff to recovery and *under every theory fairly drawn from the pleadings and evidence* [cits.] and if necessary, prove the negative or nonexistence of an essential element affirmatively asserted by the plaintiff.' [Cit.]" *Waller v. Transworld Imports*, 155 Ga. App. 438, 439 (271 SE2d 1) (1980). On motion for summary judgment made by the defendant, all evidence most favorable to the Jordans' position, including their own testimony, will be taken as true. Id. Accordingly, we find that appellants have raised sufficient fact questions as to whether appellee owed them a legal duty to protect them from construction defects to preclude a grant of summary judgment in favor of appellee. There was

evidence that NHS' activity went beyond that of the usual and ordinary construction moneylender. See *Butts*, supra. While no duty existed originally on appellee's part to inspect for the benefit of appellants, there is evidence that the inspection process over a period of time became one that appellee was doing, or represented it was doing, for the benefit of appellants, particularly in view of the allegations that Buechele, in order to gain Jordan's signature on the payment approval forms, assured him that corrections would be made so long as payments were continued. Thus, issues of fact were raised as to whether appellants were induced to rely upon the representations of NHS' agent, Buechele, whether the inspections were being made for the benefit of appellants and not appellee, and ultimately, whether a legal duty to appellants arose based on the actions of the parties. See *Butts*, supra.

The facts as presented by appellants are hotly disputed by appellee. However, " '(t)he cardinal rule of the summary judgment procedure is that the court can neither resolve the facts nor reconcile the issues, but can look only to ascertain if there is an issue. [Cit.]' [Cit.]" *Aiken v. Drexler Shower Door*, 155 Ga. App. 436, 437-438 (270 SE2d 831) (1980). Further, "[o]n summary judgment the court is concerned only with whether there is a genuine issue of fact for determination and not with the difficulty the appellant may have in proving his case." *Rigby v. Powell*, 233 Ga. 158, 162 (210 SE2d 696) (1974). Since material issues of fact remain for jury determination, the trial court erred by granting appellee's motion for summary judgment. Id.

2. In view of our decision in Division 1, it is not necessary to consider appellants' remaining enumeration of error.

*Judgment reversed. McMurray, C. J., and Deen, P. J., concur.*

Decided June 20, 1984 —
Rehearing denied July 3, 1984 —

*Michael E. Utley*, for appellants.
*Daniel K. Anglin, John F. Sweet*, for appellee.