69717. LEON JONES FEED & GRAIN, INC. v. GENERAL BUSINESS SERVICES, INC.
(333 SE2d 861)

POPE, Judge.

Leon Jones Feed & Grain, Inc. (Jones) brought suit against General Business Services, Inc. (GBS) alleging negligence in the performance of financial and tax advice service to Jones. The dispute centers on Jones' contention that GBS failed to advise it of certain Georgia sales tax exemptions available to it. The parties stipulate that upon showing proper proof, one who is exempt from payment of Georgia sales taxes, but who has mistakenly paid the taxes, is entitled by statute to a full refund of the mistakenly paid taxes for a period of three

years prior to the date on which the claim is presented to the State of Georgia. In 1981 GBS advised Jones of the exemption. Jones applied for and received a refund from the State of Georgia for sales taxes mistakenly paid in 1981, 1980, 1979 and half of 1978. The parties also stipulate that a four-year statute of limitation is applicable to Jones' cause of action, and that suit was filed on December 15, 1981.

The issue presented in this appeal is whether Jones has a right to seek damages from GBS for the sales taxes paid in the three-year period prior to December 16, 1977. Jones contends that had GBS properly advised it of the exemption on December 16, 1977 it could have applied for a refund of taxes paid in the three previous years. Jones argues that this refund is thus merely a greater measure of damages as provided by the refund statute of the tax law than would ordinarily be available in a professional negligence action. The trial court disagreed and ruled that Jones was barred by the statute of limitation from seeking damages occurring before December 16, 1977. *Held*:

The fallacy in Jones' argument is its assumption that the applicable statute of limitation is to be counted back from the time of the filing of suit. This simply is not correct. In *Jankowski v. Taylor, Bishop & Lee*, 246 Ga. 804 (273 SE2d 16) (1980), the Supreme Court set out the principles which control our decision in the present case. Although the *Jankowski* case involved legal malpractice, it is clear from the decision that its principles extend to cases involving other types of alleged professional negligence. See, e.g., *Shessel v. Stroup*, 253 Ga. 56 (316 SE2d 155) (1984), and *McDaniel v. Colonial Mtg. Svc. Co.*, 167 Ga. App. 717 (307 SE2d 279) (1983). The court in *Jankowski* held that a cause of action accrues when there is both a wrongful act and damage. This is true where even slight or nominal damage occurs as a result of the wrongful act. The statute of limitation begins to run at the time the wrongful act accompanied by any appreciable damage occurs. Applying this principle to the present case, it is clear that each time Jones paid the sales tax in reliance on GBS's advice a cause of action accrued in favor of Jones and the four-year statute of limitation began to run. The damage incurred at that point would not be very great. It would be simply the loss of the use of the money paid unnecessarily. This damage would remain even if GBS corrected the mistake immediately by properly advising its client and promptly applying for a refund as allowed by law. In that event, the damage incurred would be slight; nonetheless it would be legally cognizable damage which, coupled with the wrongful act of failure to advise Jones of the sales tax exemption, would support a cause of action by Jones against GBS. Thus, the statute of limitation would have run on any advice given in 1976 in 1980, 1975 in 1979, and so on.

Jones' argument that the three-year refund which it could have

gotten if properly advised in 1977 should be recoverable is also disposed of by a *Jankowski* principle. In Division 2 of *Jankowski*, the court held that a failure to correct the act which caused damage is not a separate breach for which the client has a new cause of action. Thus, in the present case, GBS' alleged failure to advise Jones in 1977 that a refund could be had was merely a failure to correct the earlier breach for which damage had already been incurred, as discussed above. Thus, had GBS advised Jones at that time it would have only ameliorated damages incurred for the earlier wrongful acts, but the failure to so advise was not a new act of negligence which would trigger the running of the statute of limitation anew. The situation in the present case is closely analogous to that in the *Jankowski* case, supra. In *Jankowski*, the client suffered slight damage when the lawyer allowed the case to be dismissed without prejudice. This was within the statute of limitation; had the lawyer discovered the breach, the action would have been reinstated. The damage incurred when the suit was dismissed was not irreparable; court costs and delays in the progress of the case were factors of damage mentioned by the court in *Jankowski*, supra at 806. Severe damage was incurred only when the statute of limitation ran and the action had not been refiled. The plaintiff in *Jankowski* advanced the argument that a new tort occurred when the statute of limitation ran and he completely lost his right to proceed. The court in *Jankowski* specially rejected this argument, holding that loss of the right to proceed was but an additional damage flowing from the earlier breach. In the present case, as we have discussed above, Jones had a cause of action each time he paid the sales tax unnecessarily. The fact that GBS failed to advise the company that a refund could be had was merely greater damage (loss of the amount paid) added to that damage already incurred (loss of the use of the amount paid).

The dissent argues that the record is incomplete and that we do not know the scope of GBS' duty to Jones. However, in answer to interrogatory number 8 propounded by GBS, Jones asserts, "Specifically, plaintiff asked defendant's agent Matia to perform all services rendered in connection with the filing of state and federal tax returns in a competent and professional manner and to prepare such returns in such a manner as to require plaintiff to pay only those taxes for which it was legally obligated." Thus, the duty is clear from the record. GBS had a continuing duty to advise Jones so that Jones paid only those taxes it was obligated to pay under the law. Allowing Jones to pay the sales tax was a breach of that duty accompanied by immediate, legally cognizable damage for which Jones had a present cause of action. Loss of the right to the refund was not a new breach, but rather a dramatic leap in the quantum of damage suffered. Clearly, the principles set out in *Jankowski*, supra, apply here and control our

decision. For the foregoing reasons, we find that the grant of partial summary judgment by the trial court was correct.

*Judgment affirmed. McMurray, P. J., Carley, Sognier, and Benham, JJ., concur. Banke, C. J., Deen, P. J., Birdsong, P. J., and Beasley, J., dissent.*

BEASLEY, Judge, dissenting.

I believe the record thus far established does not entitle defendant to judgment as to sales taxes paid by plaintiff prior to December 16, 1977, for which refunds were not sought. The majority holds that the four-year statute of limitation ran as to these because the wrongful act and damages occurred each time plaintiff paid the tax in reliance on defendant's erroneous advice.

Plaintiff is not basing its action on wrongful advice which led it to pay, however. That "advice" was silence, in fact, as Jones' deposition shows that the taxes the company claims it should not have paid, because it was exempt as a common carrier, were the sales taxes it paid on the periodic purchases of equipment such as trucks and replacement parts for trucks. *One* of the things it contends is that it should have been told by defendant that the company did not have to pay the sales taxes, after it became licensed as a common carrier in 1974. According to Jones, the accountant who began doing plaintiff's work in 1973 did not tell the client that it no longer had to pay the sales tax. This would be a continuing duty; each time plaintiff paid, it did so unnecessarily. Apparently Jones was correct about this, as refunds were obtained on some of these payments after it was discovered that the taxes had been paid. The accountant did not tell the client that it was not obligated to pay. So the company paid, year after year, until a conversation with a business friend brought the exemption status to plaintiff's owner's attention, and the accountant filed for and obtained refunds for the years as far back as the refund statute allowed.

Plaintiff is not basing its claim solely on the obligation to advise that it need not pay. It bases its claim *also* on the ground that defendant had a legal duty to advise it that it could obtain a refund but did not do so, year after year. This duty, it says, arises from the contractual relationship of the parties, whereby the accountant had continuing supervisory control of plaintiff's books and records and had all tax preparation functions. Whether or not the defendant had such a duty would depend on the extent of that relationship and on the standard of care required of this particular profession. In neither instance is the record developed, but Jones' deposition does show the continuing and continuous relationship was more than a sporadic or intermittent one and that the accountant knew from the beginning that plaintiff had secured common carrier certification yet never filed for the re-

fund until the client brought the matter up, and by then some of the refunds were beyond reach. It is those which the client sues for.

The parties stipulated that Georgia tax law gives the payer the right to secure a refund for taxes paid but not owed, if action is taken within three years. OCGA § 48-2-35 (b) (1). The payer lost that right due, it says, to the negligent omission of the accountant in not seeking certain of the refunds while they were available. Thus the real question is whether the accountant had a duty to seek the statutorily-provided refunds. If it did, then the wrongful act was in not initiating each refund claim within the time it would be allowed.

The majority concludes that *Jankowski v. Taylor, Bishop & Lee*, 246 Ga. 804 (273 SE2d 16) (1980) applies so as to disallow the creation of any new duty here to correct a wrongful act and thereby avoid its consequences. I do not believe *Jankowski* compels that result. There the court was dealing with a law firm's duty to attend trial and avoid dismissal for want of prosecution. The client did not sue for more than four years after this occurred. In the instant case, the issue does not primarily involve the accountant's duty to advise the client that it did not have to pay sales taxes but rather its duty to file for a refund when such taxes are inadvertently paid. To say that a lawyer has no separate duty to correct his negligence insofar as the law allows does not foreclose the recognition of a legal duty on the part of an accountant to seek a statutorily-provided refund for his client so long as it is available. It depends on what the duties of that profession are. The accountant may have that duty even if he was not responsible for the client's having erroneously paid the sales taxes in the first place. He may not even have been the accountant at the time the sales taxes were paid out of ignorance of the law.

The majority's position creates a paradoxically unfair shield for the negligent accountant: if he sleeps on his client's rights long enough, the statutory remedy (refund) expires and so does his obligation, carrying with it the right of the client to sue for the negligence. Thus, the more egregious the omission by the accountant, in terms of letting time elapse without action, the greater the chance of his being saved by the litigation statute of limitation from judicial redress to his client. Here the wrongdoer's delay, rather than the wronged party's delay, is being allowed to bring into play the statute of limitation.

"The statute of limitation begins to run on any given claim on the date the claim accrues — in other words, on the date that suit on the claim can first be brought. 'When the question is raised as to whether an action is barred by a statute of limitation, the true test to determine when the cause of action accrued is "to ascertain the time when the plaintiff could first have maintained his action to a successful result." ' *Mobley v. Murray County*, 178 Ga. 388 (1) (173 SE 680)

(1934)." *Hoffman v. Ins. Co. of North America*, 241 Ga. 328, 329 (245 SE2d 287) (1978), quoted and applied recently in *Bryant v. Allstate Ins. Co.*, 254 Ga. 328 (326 SE2d 753) (1985).

Since a refund was obtainable until the statutory cut-off date, the duty (if there was one) to advise that a refund was available would have continued from the time a refund first became obtainable at least to the date the right to a refund expired. At that latter date a cause of action would accrue because it is then that damages, i.e., the lost refund, could be awarded. Before that, what would be the measure of damages?

Thus, it would not be an actionable wrongful omission to act until the refund became unavailable, i.e., at the end of each three-year period. The four-year statute would begin to run when "there is a violation of a specific duty accompanied with damage. Code Ann. § 105-104 [now OCGA § 51-1-8]. . . . [B]oth the wrongful act and the damage must exist in order for there to be a cause of action." *Jankowski v. Taylor, Bishop & Lee*, 246 Ga. 804, 805, supra. Plaintiff could not, in the words of *Jankowski*, "have successfully maintained the action" for failure to seek the refund until there was damage to the taxpayer. The principle was repeated in *Shessel v. Stroup*, 253 Ga. 56, 58 (316 SE2d 155) (1984): "Just as a wrongful death action may not be brought until death occurs, a personal injury claim may not be brought until there is injury."

The same would apply to this tort. Loss was not sustained until the refund could no longer be obtained. Plaintiff's lawsuit would have been subject to a perfunctory motion to dismiss, had it brought such lawsuit for damages while the refund right was still extant, because it would have suffered no legally cognizable harm from the accountant's failure to file for a refund at that point. Loss of use of money is recoverable in the form of interest when interest is provided for, but that would not obtain here. Filing for the refund would have been the remedy.

In *Jankowski*, moreover, the measure of damages would have been difficult if not practically impossible. That case involved failure to revive a shareholders derivative suit. How would the law assess damages for failure to pursue it? Here, on the other hand, the damages claimed are simply the mathematically-calculable tax refunds, plus interest, for those several years for which the taxing authority would no longer pay them.

As the court quoted in *Shessel*, supra at 59: " 'Statutes of limitation . . . are designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until

evidence has been lost, memories have faded, and witnesses have disappeared.' " Here it appears that the statute is being used by the professional who slept on its client's rights, to shield it from responsibility for its inaction, an omission which closed the door to a refund.

The terms of the contract between the accountant and the trucking company have not been shown to be other than what Jones testified to, which was that the accountant set up the books, periodically reviewed and corrected them, provided ledgers and record-keeping forms and instructions, prepared and filed all the tax returns. Whether the nature of the contractual relationship included a duty to advise regarding refund rights based in the unnecessary payment of sales taxes has not been established. But there is some evidence of such a duty, as the accountant did undertake to prepare and pursue the refunds still obtainable when plaintiff brought the matter to its attention. If it did not acknowledge such a duty, it has not explained why it assumed that duty's burdens. In addition, expert professional testimony as to the standard of care required of an accountant in such circumstances may be indicated. Defendant does not show that, as a matter of law, it had no such legal duty.

" 'To entitle the defendant to a summary judgment the undisputed facts as disclosed by the pleadings and evidence must negate at least one essential element entitling plaintiff to recovery and *under every theory fairly drawn from the pleadings and evidence* [cits.] and if necessary, prove the negative or nonexistence of an essential element affirmatively asserted by the plaintiff.' [Cit.]" (Emphasis supplied.) *Waller v. Transworld Imports*, 155 Ga. App. 438, 439 (2) (271 SE2d 1) (1980). This was quoted and applied in *Jordan v. Atlanta Neighborhood Housing Svc.*, 171 Ga. App. 467, 468 (1) (320 SE2d 215) (1984), where the court went on to say: "On motion for summary judgment made by the defendant, all evidence most favorable to the [plaintiff's] position, including [its] own testimony, will be taken as true." Genuine issues of material fact remain as the duty of an accountant in circumstances such as existed here, and I would reverse the grant of partial summary judgment to defendant.

I am authorized to state that Chief Judge Banke, Presiding Judge Deen and Presiding Judge Birdsong join in this dissent.

DECIDED JULY 9, 1985 —
REHEARING DENIED JULY 31, 1985 —

*William H. Major, William B. Brown*, for appellant.
*Sidney R. Barrett, Jr., J. Alexander Porter*, for appellee.