A90A0243. FIRST FEDERAL SAVINGS BANK OF BRUNSWICK
v. FRETTHOLD et al.
(394 SE2d 128)

SOGNIER, Judge.
After two materials suppliers filed lien foreclosure suits against

Norman and Ruth Fretthold to recover sums due for materials supplied for the construction of the Frettholds' residence, the Frettholds brought a third-party complaint against First Federal Savings Bank of Brunswick, their construction lender, alleging negligence in the bank's disbursement of the construction funds without first obtaining affidavits of payment or partial lien waivers from the general contractor. The materials suppliers received summary judgments totalling $30,754.88, and the third-party claim was tried to a jury. The bank appeals from the judgment entered on the jury verdict awarding $16,814.31 to the Frettholds.

In May 1986, appellees entered into a contract with Bobby Crews d/b/a Gull Development for the construction of a house in McIntosh County. Appellees funded $52,000 of the total construction price and financed the balance of $40,000 with a construction loan from appellant secured by a deed to secure debt. The loan agreement, which was executed by appellant, appellees, and Crews, provided, inter alia, that appellees would deposit their portion of the construction funds with appellant and then authorize periodic disbursements by appellant to Crews from the construction account, which included the funds furnished by appellees and the money advanced by appellant pursuant to the loan agreement. The loan agreement authorized appellant to inspect the progress of the work and to obtain paid and receipted labor and materials bills from Crews before making disbursements, and provided that appellees "[a]ccept the sole responsibility for the selection of [the] Contractor . . . and for the purchase and payment of materials, supplies and equipment to be used in the construction." The loan agreement further provided that appellees agreed to complete the project free of liens, and that appellant "SHALL NOT BE LIABLE FOR THE PAYMENT OF ANY BILLS INCURRED ON ACCOUNT OF SAID CONSTRUCTION."

After the first payment to Crews, appellees asked appellant to make all further disbursements directly to Crews without first obtaining a signed disbursement order from appellees because they planned to be out of town during much of the construction period and did not want their absences to hold up the project. As a result, a clause was added to the loan agreement providing that appellant was to "[m]ake checks payable to Gull Development," and appellant processed the subsequent pay requests by inspecting the job site to ensure the work for which Crews sought payment had been performed and then disbursing funds from the construction account to Crews. The house was almost complete when appellees learned from a materials supplier that he had not been paid by Crews, who filed a bankruptcy petition a few days later. Upon investigation, appellant discovered the two liens sub judice had just been filed.

At trial, appellee Norman Fretthold, who acknowledged that he

had never before had a construction loan and did not read the loan agreement with appellant, testified that he never checked to see whether Crews was paying the subcontractors and suppliers because his "experience with a bank has always been that they would take the proper precautions when they loaned the money out and when they paid it out." Greg Strickland, appellant's assistant vice-president, testified that appellant did not determine whether the subcontractors and suppliers had been paid before disbursing funds to Crews because Crews had a good reputation as a reliable contractor and because appellant's interest in the property was secured by the deed to secure debt. In response to special interrogatories, the jury found that appellant was appellees' agent for disbursement of construction funds and that appellant was negligent in its discharge of that obligation.

Appellant contends the trial court should have granted its motion for directed verdict made on the ground that appellant had no duty to ensure the subcontractors and materials suppliers were paid before disbursing funds to Crews. We agree and reverse. Although the relationship between the parties was created by contract, appellees' claim alleged negligence rather than breach of the loan agreement. A tort is the unlawful violation of a private right other than a breach of contract, OCGA § 51-1-1, but " 'private duties may arise from statute, or flow from relations created by contract, express or implied. The violation of any such specific duty, accompanied with damage, gives a right of action [in tort].' [Cits.] . . . In such a case the liability arises out of the breach of duty incident to and created by the contract, but is only dependent upon the contract to the extent necessary to raise the duty. [Cits.] . . . [This principle] has been applied to contractual relations between principal and agent . . . . [Cits.]" *Mauldin v. Sheffer,* 113 Ga. App. 874, 878-879 (150 SE2d 150) (1966).

Here, the loan agreement, as amended, obligated appellant to disburse funds from the construction amount to Crews by checks payable directly to him. Assuming, without deciding, that this contractual obligation gave rise to an agency relationship, recovery in tort required proof of not merely a breach of a contract term, but breach of a duty imposed by law — i.e., "either a duty imposed by a valid statutory enactment of the legislature or a duty imposed by a recognized common law principle declared in the reported decisions of [our] appellate courts." Id. at 880. No applicable statutory duty is claimed; therefore, we must determine whether there exists a common law principle that could be interpreted to require appellant to obtain lien waivers or payment affidavits or otherwise ensure that the suppliers were paid before disbursing funds to Crews.

In *Butts v. Atlanta Fed. Savings &c. Assn.,* 152 Ga. App. 40, 44 (262 SE2d 230) (1979), recognizing that "[t]he primary duty of a federal savings and loan association is to protect the assets of its mem-

bers and depositors; it does not insure the assets of its borrowers [cit.]," we held that a construction lender has no duty to protect the homeowners from construction defects through its inspections of the progress of the work, and that any such inspections are made for the benefit of the lender. Id. at 42-43; see *Harden v. Akridge,* 193 Ga. App. 736 (389 SE2d 6) (1989). We have recognized an exception to this general rule only "when the lender's financing activity extends beyond that of a conventional construction lender and engages [the lender] in activities actually connected to construction of the property. [Cit.]" Id. at 736. In *Jordan v. Atlanta Neighborhood Housing Svc.,* 171 Ga. App. 467-468 (320 SE2d 215) (1984), we found such an exception and accordingly reversed a summary judgment entered in favor of the lender where the evidence showed the lender had prepared the documents defining the scope of work, solicited the bids, monitored the progress of the work, and assured the homeowner that the contractor's deficiencies would be corrected once payment was made.

We find no basis for such an exception in the case at bar. Appellant's activities were commensurate with those of a conventional construction lender. Although appellant did agree to accommodate appellees by making payments directly to Crews, there is no evidence appellees surrendered their contractual obligation to make certain that all labor and materials bills were paid and to keep the property free from liens. Cf. *Henderson v. Mitchell Engineering Co.,* 158 Ga. App. 306, 307-308 (1) (279 SE2d 750) (1981). (The purpose of lien laws is to make owner's property liable for payment for improvements thereon, and thus owner is responsible for ensuring that payments made to contractor are "properly disbursed by the contractor to those having valid claims for labor and materials.") Given that the lender's primary role is to protect its interest in the secured property, we find no basis for imposing upon the lender the duties of the owner and general contractor to pay for labor and materials supplied to the project. Absent clear evidence that the lender either expressly agreed to undertake this obligation or actively participated in the monitoring of payments made during the construction, the creation of such a burden would discourage construction lending. See *Harden,* supra at 737. Appellant's obligation to exercise diligence and good faith in the disbursement of construction funds to Crews required that payment be made in a timely manner and for work actually performed, but did not compel appellant to undertake the duties of Crews and appellees, and certainly did not authorize appellees to abdicate their responsibility for ensuring payments to subcontractors and suppliers. See generally *Butts,* supra.

While issues of negligence and agency are ordinarily for the trier of fact, the question of duty is for the court, *Adler's Package Shop v.*

*Parker,* 190 Ga. App. 68, 72 (1) (378 SE2d 323) (1989), and if the court finds no duty was owed, no material question of fact remains for determination by the jury. Id. Since we have found no duty of appellant to ensure that suppliers were paid before disbursing funds to Crews, we hold the trial court erred by denying appellant's motion for directed verdict.

*Judgment reversed. McMurray, P. J., and Birdsong, J., concur. Carley, C. J., disqualified.*

DECIDED MAY 1, 1990.

*Brannen, Searcy & Smith, Leesa A. Bohler, Wayne L. Durden,* for appellant.

*Raymond A. Majors, Jr., Thomas J. Lee, Neil L. Heimanson,* for appellees.

*Carlton M. Henson,* amicus curiae.