A94A0260. PETERSON et al. v. FIRST CLAYTON BANK & TRUST COMPANY.
(447 SE2d 63)

McMurray, Presiding Judge.

Stovall Building Supplies, Inc. filed a complaint to foreclose a materialman's lien and to collect on the open account of Dale Shope ("the builder") for materials supplied for construction of a house on real property owned by Robert L. Peterson and Gertrude J. Peterson. The Petersons filed a third-party claim against their construction lender, First Clayton Bank & Trust Company ("the bank"), alleging the bank breached contractual and fiduciary duties in disbursing loan proceeds for construction of a house. Specifically, the Petersons allege the bank failed to properly administer, account for and exercise appropriate care to assure that the builder had been paying subcontractors and suppliers. The bank denied the material allegations of the claim and filed a motion for summary judgment.

The Petersons, while residing in Pinellas Park, Florida, purchased land in Rabun County, Georgia, for the purpose of building a home. To this end, the Petersons entered into a contract with the builder for construction of a house. The construction contract included a payment agreement under which the builder "will be required to furnish to the owner or bank representative, upon request or at times of withdrawals, a statement showing itemization of expenditures to date, items due and unpaid, and to support said statement with receipted bills, affidavits, waivers of liens, and other satisfactory evidence of payment." The Petersons went to the bank with

the construction contract and discussed the terms of the contract with Darlene Powers, a loan officer for the bank. Powers reviewed "the terms of the Construction Contract and [the] manner of making payments to [the builder] of the construction loan proceeds" and affirmed that the bank would finance construction of the house.

"Between the time [the Petersons] entered the construction contract with [the builder] and the time [they were to sign] the loan agreements and related promissory notes with the Bank, [the Petersons] spoke with Ms. Darlene Powers [several times] concerning the construction of [their] residence and the construction loan. During these conversations[, the Petersons] told Ms. Powers and she acknowledged that [the Petersons] were agreeing that the Bank . . . would handle disbursements of payments to [the builder] required under the construction contract and that the Bank would regularly inspect the property to monitor progress of construction. [The Petersons] made it clear to Ms. Powers that because [they] lived in Florida and could not frequently leave work, that [they] would be unable to regularly inspect the construction progress or handle the payments to [the builder]. Ms. Powers agreed that she or her supervisor, Mr. Hickcox, would handle making payments to [the builder] and charge [the Petersons'] loan account. Ms. Powers also agreed to keep [the Petersons] informed about the progress of the work on [the Petersons'] home. She made all these agreements having received and read the terms of [the Petersons'] construction contract and the related payment agreement with [the builder]. [The Petersons] told Ms. Powers that [they] would rely upon her for making payments, to the general contractor on [their] behalf from [their] construction loan account."

On June 19, 1991, the Petersons executed a "Construction Loan Agreement" which provides, in pertinent part, as follows: "Borrower authorizes and directs Lender to pay any loan proceeds due under the terms of this agreement to [the builder]. Lender has no liability or obligation in connection with the project or the construction and completion thereof, except to advance loan proceeds as agreed in this document. Lender is not obligated to inspect any improvements, nor is it liable for the performance or default of any contractor or subcontractor or for any failure to construct, complete, protect or insure said improvements or for the payment of any costs or expenses incurred in the project. Nothing, including without limitation any disbursement or the delivery or acceptance of any document or instrument, shall be construed as a representation or warranty on Lender's part. Lender is not the agent or representative of the Borrower, and the Borrower is not the agent or representative of the Lender. This agreement does not reflect a partnership or joint venture on the part of the parties and shall only serve to represent and document the loan terms of

Borrower's construction loan. . . . Lender reserves the right to require execution of any materialmen's lien affidavits or release of materialmen's lien affidavits by any contractor or subcontractor or Borrower at any time during the term of this agreement. . . . The parties agree that the Lender may disburse the proceeds of the loan to pay any expenses or liens incurred in connection with the construction and completion of the single-family residence and payment or performance of any obligation of Borrower to Lender, and at its election, Lender may pay said proceeds to Borrower or to the contractor or to any other persons furnishing labor, supplies or services for construction of the residence or to the holder of any lien, charge or encumbrance on the premises or other property securing the loan, and the whole of such proceeds are hereby assigned, transferred and pledged to Lender for such purposes. . . . This agreement shall constitute the sole agreement between the parties and shall not be modified, changed or altered unless in writing executed by both parties."

"On the same day and concurrently with [the Petersons] signing the loan agreement with the Bank, Ms. Powers again offered to and said she would handle disbursements of draws payable to [the builder] under the construction contract. Ms. Powers, in order to confirm the agreement, asked [the Petersons] to sign a handwritten note reconfirming [the parties'] agreement for [Powers] to make construction contract payments to [the builder]." The Petersons complied and executed the following handwritten note stating: "Please disburse draws to Dale Shope Construction . . . for construction of house [in] Sky Valley Subdivision, Rabun County, Georgia."

After executing the loan agreement, either Powers or Rodney Hickcox disbursed payments for construction of the house to the builder from proceeds of the Petersons' loan. "[W]ith most of the draws, [Powers] did contact the Petersons and go over the disbursement with them, and they would give [her] the authorization to go ahead and disburse the funds." However, the builder failed to pay suppliers and subcontractors on the construction project and over $38,000 in liens accrued against the Petersons' property. The Petersons were not able to satisfy these liens and they defaulted under the terms of the "Construction Loan Agreement." The bank subsequently foreclosed on the Petersons' property.

This appeal followed an order granting the bank's motion for summary judgment. *Held*:

1. The Petersons contend in their first five enumerations that genuine issues of material fact remain as to the bank's liability based on evidence that the bank agreed to administer and disburse proceeds of the construction loan. Specifically, the Petersons contend that the bank had a contractual obligation to ensure that suppliers were paid before disbursing funds to the builder and that a private duty arose

between the parties before and after execution of the "Construction Loan Agreement" when the bank agreed to disburse loan proceeds directly to the builder.

(a) *Express or Implied Contractual Liability.* " ' "The construction of a contract is a question of law for the (trial) court. . . ." "The cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction." ' *Village Enterprises v. Ga. R. Bank &c. Co.*, 117 Ga. App. 773, 774 (161 SE2d 901); see also *Henderson Mill, Ltd. v. McConnell*, 237 Ga. 807, 809 (229 SE2d 660)." *Fidelity Nat. Bank v. Reid*, 180 Ga. App. 428, 430 (2) (348 SE2d 913). In the case sub judice, the "Construction Loan Agreement" expressly authorized and directed the bank to pay loan proceeds to the builder and provides that the bank "has no liability or obligation in connection with the project or the construction and completion thereof, except to advance loan proceeds as agreed in this document [and that the bank] is not obligated to inspect any improvements, nor is it liable for the performance or default of any contractor or subcontractor or for any failure to construct, complete, protect or insure said improvements or for the payment of any costs or expenses incurred in the project." Notwithstanding, the Petersons argue that the bank deviated from these provisions by agreeing (via the promise of Loan Officer Powers) to pay the builder and monitor the progress of construction. The Petersons reason that these commitments constitute a modification of the "Construction Loan Agreement" pursuant to OCGA § 13-4-4 which imposed a duty upon the bank to verify payment of materialmen and subcontractors before disbursing loan proceeds to the builder. We do not agree.

There is no evidence that Powers or any other officer of the bank promised the Petersons that the bank would ensure that materialmen and subcontractors were paid before loan proceeds were disbursed to the builder. Powers simply promised the Petersons that the bank would do what the "Construction Loan Agreement" authorized the bank to do in the first place, i.e., pay loan proceeds to the builder and monitor the construction project. Under these circumstances, we reject any argument that Powers' promise to pay loan proceeds to the builder and monitor the construction project inferred an obligation upon the bank to ensure that materialmen and subcontractors were paid before proceeds of the Petersons' loan were disbursed to the builder. "An implicit contractual provision exists only where such provision is necessary to effect the full purpose of the contract and is so clearly within the contemplation of the parties that they apparently deemed it unnecessary to state it. See *Alice v. Robett Manufacturing Co.*, 328 FSupp. 1377." *Ellis v. Brookwood Park Venture*, 161

Ga. App. 242, 243 (288 SE2d 308). Further, " '(t)here cannot be an express and implied contract for the same thing existing at the same time between the same parties. It is only when the parties themselves do not expressly agree, that the law interposes and raises a promise. (Cit.)' *Fonda Corp. v. Southern Sprinkler Co.*, 144 Ga. App. 287, 292 (3) (241 SE2d 256) (1977)." *Gilbert v. Edmondson*, 193 Ga. App. 593 (1), 594 (388 SE2d 713).

In the case sub judice, there is no evidence that the bank agreed to verify payment of materialmen and subcontractors before making disbursements to the builder and it does not appear that such a condition was reasonable and necessary to effect the full purpose of the "Construction Loan Agreement." Further, there is nothing to indicate that such a condition was so clearly within the contemplation of the parties that they deemed it unnecessary to state. On the contrary, the Petersons expressly authorized the bank to pay loan proceeds directly to the builder and they affirmed that the bank has "no liability or obligation in connection with the project or the construction and completion thereof, except to advance loan proceeds as agreed in this document [and that the bank] is not obligated to inspect any improvements. . . ." Further, the "Construction Loan Agreement" provides that "[t]his agreement shall constitute the sole agreement between the parties and shall not be modified, changed or altered unless in writing executed by both parties." Consequently, since there is no proof that the bank modified, changed or altered its rights and obligations in writing after execution of the "Construction Loan Agreement," the express terms of the parties' agreement control, i.e., the bank "is [not] liable for the performance or default of any contractor or subcontractor or for any failure to construct, complete, protect or insure said improvements or for the payment of any costs or expenses incurred in the project." In other words, the bank had no contractual obligation (either express or implied) to ensure that materialmen and subcontractors were paid before loan proceeds were disbursed to the builder.

(b) *Tort Liability Arising From Contract.* "A tort is the unlawful violation of a private right other than a breach of contract, OCGA § 51-1-1, but ' "private duties may arise from statute, or flow from relations created by contract, express or implied. The violation of any such specific duty, accompanied with damage, gives a right of action (in tort)." (Cits.) . . . In such a case the liability arises out of the breach of duty incident to and created by the contract, but is only dependent upon the contract to the extent necessary to raise the duty. (Cits.) . . . (This principle) has been applied to contractual relations between principal and agent. . . . (Cits.)' *Mauldin v. Sheffer*, 113 Ga. App. 874, 878-879 (150 SE2d 150) (1966)." *First Fed. Savings Bank of Brunswick v. Fretthold*, 195 Ga. App. 482, 484 (394 SE2d

128). In the case sub judice, it is undisputed that the relationship between the bank and the Petersons was created by contract. However, the Petersons alleged negligence as well as breach of the loan agreement. Consequently, assuming this contractual obligation gave rise to an agency relationship by virtue of the bank's agreement to make payment disbursements to the builder because the Petersons were out of town, recovery in tort requires "proof of not merely a breach of a contract term, but breach of a duty imposed by law — i.e., 'either a duty imposed by a valid statutory enactment of the legislature or a duty imposed by a recognized common law principle declared in the reported decisions of (our) appellate courts.' [*Mauldin v. Sheffer*, 113 Ga. App. 874, 880, supra]." *First Fed. Savings Bank of Brunswick v. Fretthold*, 195 Ga. App. 482, 484, supra. We must therefore examine whether there exists a common-law principle that could be interpreted to require the bank to obtain lien waivers or payment affidavits or otherwise ensure that the suppliers were paid before disbursing funds to the builder.

"In *Butts v. Atlanta Fed. Savings &c. Assn.*, 152 Ga. App. 40, 44 (262 SE2d 230) (1979), recognizing that '(t)he primary duty of a federal savings and loan association is to protect the assets of its members and depositors; it does not insure the assets of its borrowers (cit.),' we held that a construction lender has no duty to protect the homeowners from construction defects through its inspections of the progress of the work, and that any such inspections are made for the benefit of the lender. Id. at 42-43; see *Harden v. Akridge*, 193 Ga. App. 736 (389 SE2d 6) (1989). We have recognized an exception to this general rule only 'when the lender's financing activity extends beyond that of a conventional construction lender and engages (the lender) in activities actually connected to construction of the property. (Cit.)' Id. at 736. In *Jordan v. Atlanta Neighborhood Housing Svc.*, 171 Ga. App. 467-468 (320 SE2d 215) (1984), we found such an exception and accordingly reversed a summary judgment entered in favor of the lender where the evidence showed the lender had prepared the documents defining the scope of work, solicited the bids, monitored the progress of the work, and assured the homeowner that the contractor's deficiencies would be corrected once payment was made." *First Fed. Savings Bank of Brunswick v. Fretthold*, 195 Ga. App. 482, 484-485, supra. In the case sub judice, we find no basis for such an exception.

Although the bank agreed to accommodate the Petersons by making payments directly to the builder, there is no evidence that the bank agreed to obtain lien waivers or payment affidavits or otherwise ensure that the suppliers were paid before disbursing funds to the builder. Further, there is no proof that the Petersons "surrendered their contractual obligation to make certain that all labor and materi-

als bills were paid and to keep the property free from liens. Cf. *Henderson v. Mitchell Engineering Co.*, 158 Ga. App. 306, 307-308 (1) (279 SE2d 750) (1981). (The purpose of lien laws is to make owner's property liable for payment for improvements thereon, and thus owner is responsible for ensuring that payments made to contractor are 'properly disbursed by the contractor to those having valid claims for labor and materials.') Given that the [bank's] primary role is to protect its interest in the secured property, we find no basis for imposing upon the lender the duties of the owner and general contractor to pay for labor and materials supplied to the project. Absent clear evidence that the [bank] either expressly agreed to undertake this obligation or actively participated in the monitoring of payments made during the construction, the creation of such a burden would discourage construction lending. See *Harden*, supra at 737. [The bank's] obligation to exercise diligence and good faith in the disbursement of construction funds to [the builder] required that payment be made in a timely manner and for work actually performed, but did not compel [the bank] to undertake the duties of [the builder] and [the Petersons], and certainly did not authorize [the Petersons] to abdicate their responsibility for ensuring payments to subcontractors and suppliers. See generally *Butts*, supra.

"While issues of negligence and agency are ordinarily for the trier of fact, the question of duty is for the court, *Adler's Package Shop v. Parker*, 190 Ga. App. 68, 72 (1) (378 SE2d 323) (1989), and if the court finds no duty was owed, no material question of fact remains for determination by the jury. Id. Since we have found no duty of [the bank] to ensure that suppliers were paid before disbursing funds to [the builder], we hold the trial court [did not err in granting the bank's] motion for [summary judgment as to the bank's liability for breach of a private or fiduciary duty arising out of the bank's relationship with the Petersons]." *First Fed. Savings Bank of Brunswick v. Fretthold*, 195 Ga. App. 482, 485, supra.

2. In their final enumeration, the Petersons contend the trial court "erred in granting [the bank's] Motion for Summary Judgment because a genuine issue of material fact exists concerning [the bank's] responsibility to exercise reasonable care and take appropriate precautions to protect against liens pursuant to the Doctrine of Promissory Estoppel." This contention is without merit.

"A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." OCGA § 13-3-44. In the case sub judice, there is no evidence that the bank promised to obtain lien waivers or payment affidavits or otherwise ensure that suppliers were paid before disbursing funds to the builder.

Consequently, there was no underlying promise supporting the Petersons' claim of promissory estoppel.

The trial court did not err in granting the bank's motion for summary judgment.

*Judgment affirmed. Pope, C. J., and Smith, J., concur.*

DECIDED JUNE 24, 1994 —
RECONSIDERATION DENIED JULY 21, 1994 

*McLain & Merritt, Robert B. Hill,* for appellants.
*C. Lloyd Clay,* for appellee.