A94A2250. DECOUDREAUX et al. v. MUTUAL FEDERAL SAVINGS & LOAN ASSOCIATION OF ATLANTA, INC.

(455 SE2d 88)

RUFFIN, Judge.

Victor and Carol Decoudreaux ("the Decoudreauxs"), entered into a construction loan agreement with appellee, Mutual Federal Savings & Loan Association of Atlanta, Inc. ("Mutual") for the construction of their new home. After numerous problems with the construction of the home, the Decoudreauxs sued the contractor and Mutual, attempting, inter alia, to rescind the agreement or have Mutual

pay to repair certain defects in the house. Section 2 of the agreement between the Decoudreauxs and Mutual provides "[t]hat [Mutual] is authorized to disburse funds under its control in said construction loan account, together with the net proceeds of the loan, only in proportion to its inspector's report of progress or by Architect's or Superintendent's Certificate accompanied by a proper affidavit from the contractor." The Decoudreauxs alleged that Mutual breached this agreement by disbursing funds to the contractor despite its knowledge of problems with the construction and breached its fiduciary duty by failing to monitor the quality of the construction. Mutual moved for summary judgment, and the Decoudreauxs appeal from the grant of that motion.

1. The Decoudreauxs contend that genuine issues of material fact remain as to whether Mutual's activities in connection with the project extended beyond that of a conventional lender, thereby imposing upon Mutual fiduciary as well as common law duties flowing from the loan agreement to insure that the contractor's work was performed in a "workmanlike manner" prior to disbursing any construction funds and to monitor the construction. We disagree. There is no evidence from the agreement or elsewhere that Mutual ever undertook the duty to guarantee the quality of the work prior to disbursing funds. Moreover, the record shows that pursuant to the agreement, the Decoudreauxs signed at least a dozen affidavits which stated that they were "to induce Mutual . . . to advance" funds for the construction. The Decoudreauxs continued to do so even after learning of numerous concerns about the construction in letters from Mutual's inspector, Steve Dukes.

The Decoudreauxs argue that Mutual nonetheless owed a duty to protect them and to monitor the quality of the work prior to disbursing funds. In *Harden v. Akridge*, 193 Ga. App. 736 (389 SE2d 6) (1989), where similar allegations of fiduciary and other duties were made against the lender, we held that "[o]rdinarily, an action for damages for faulty construction and incidents thereto, by a homeowner or purchaser against a lending or financing authority, will not lie because the lender's customary participation, the inspection, is normally not made for the benefit of the homeowner, but is made instead for the protection and benefit of the lender. [Cit.] An exception . . . has been recognized when the lender's financing activity extends beyond that of a conventional construction lender. . . ." Id. at 736.

"If any exception to this rule is made, it will have to be based on some clear promise of the lender to perform certain protective functions, and upon a clear and distinct participation in the activity which resulted in the damage. It is certainly not enough to make general allegations that the lender inspected the work, since such inspections

are presumed to be for its own financial purposes and are not intended to ensure a quality of work. The lender is not an insurer of the work of the contractor, unless clear promises appear to the contrary." Id. at 737 (citing *Butts v. Atlanta Fed. Savings &c. Assn.*, 152 Ga. App. 40, 42 (262 SE2d 230) (1979)).

We found such an exception and reversed a summary judgment entered in favor of the lender in *Jordan v. Atlanta Neighborhood Housing Svcs.*, 171 Ga. App. 467 (320 SE2d 215) (1984). There the evidence showed the lender had prepared the documents and listed the improvements to be made to the house, solicited the bids from the contractor, knew the homeowner was looking to it to assure proper performance of the work, and assured the homeowner that the contractor's deficiencies would be corrected once payment was made. Id. at 468-469.

The Decoudreauxs allege that inspections of the project by Dukes and two of Mutual's mortgage lenders, Roy Johnson and Joseph Wood, and correspondence about various problems concerning the construction among these individuals constituted activity beyond that of a conventional lender warranting such an exception. However, there is no evidence showing these activities to be anything but commensurate with those of a conventional construction lender. Although Mutual had, for its own protection, inspected the work pursuant to the disbursement of moneys, there is no evidence that it agreed to guarantee the quality of the work or otherwise inspect the construction prior to disbursing funds to the builder. Nor is there any evidence that Mutual promised to perform protective functions or that it distinctly participated in the faulty construction. *Harden*, supra. Mrs. Decoudreaux testified she and her husband understood that Dukes was the inspector for Mutual and was responsible for advising Mutual on whether to disburse funds. She also testified that no representation was made that Mutual had any responsibilities to them other than those contained in the loan agreement. The agreement specifically provided that Mutual "assumes no responsibility for the completion of the building, according to the plans and specifications and for the contract price." Roy Johnson testified that the Decoudreauxs and their contractor would agree to changes in the plans "and as long as they were satisfied with what was happening we would be satisfied and the reason for that is that . . . our basic duty is to make certain that things are done [according to the agreement] but we don't necessarily pass judgment on quality." See *Butts*, supra at 43 (noting that quality control is not the main purpose of the lender's inspection). Unlike the activities of the lender in *Jordan*, supra, the facts in the instant case do not warrant an exception to the general rule that a lender is not liable for faulty construction. This is particularly true given the evidence that the Decoudreauxs continued to sign the dis-

bursement affidavits despite their knowledge of problems with the construction.

" 'While issues of negligence and agency are ordinarily for the trier of fact, the question of duty is for the court, [cit.] and if the court finds no duty was owed, no material question of fact remains for determination by the jury. [Cit.]' " *Peterson v. First Clayton Bank &c. Co.*, 214 Ga. App. 94, 100 (1) (b) (447 SE2d 63) (1994). Since we have found Mutual owed no duty to inspect the project on behalf of the Decoudreauxs or to guarantee that the work was of a particular quality prior to making disbursements, we hold the trial court did not err in granting Mutual's motion for summary judgment.

2. The Decoudreauxs also contend that the trial court erred in having oral argument of the summary judgment motion without a request to do so and in failing to include findings of fact and conclusions of law in its order. However, they cite neither authority nor argument for either of these enumerations, and they are therefore deemed abandoned pursuant to Court of Appeals Rule 27 (c) (2).

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED MARCH 7, 1995.

*Herman Pierre, Jr.,* for appellants.

*Thomas, Kennedy, Sampson & Patterson, Myra H. Dixon,* for appellee.