A96A0755. DANIELS v. DEPARTMENT OF TRANSPORTATION.
(474 SE2d 26)

RUFFIN, Judge.

Clemmie Daniels sued the Georgia Department of Transportation ("DOT") for injuries he sustained in an automobile collision at a state highway intersection. Daniels alleged that the DOT's negligent design of the intersection and its failure to upgrade the intersection to eliminate safety hazards caused the collision. The trial court granted the DOT's motion for summary judgment, and Daniels appeals that order. For reasons which follow, we affirm.

"The applicable summary judgment standard is that of *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474). A movant/defendant must demonstrate by reference to evidence in the record that there is an absence of evidence to support at least one essential element of the non-moving party's case. [Cit.] A movant/defendant may discharge his burden by pointing out by reference to the affidavits, depositions, and other documents in the record that there is an absence of evidence to support the non-moving party's case. If the moving party discharges this burden, the non-moving party cannot rest on its pleadings, but rather[,] must point to specific evidence giving rise to a triable issue. [Cit.]" *Papera v. TOC Retail,* 218 Ga. App. 777 (1) (463 SE2d 61) (1995). "Summary judgment is appropriate when the court, viewing all the facts and reasonable inferences flowing therefrom in a light most favorable to the non-moving party, concludes that the evidence does not create a triable issue as to each element of the case. [Cit.]" Id.

1. In this case, the DOT met its burden of showing it was exempt from liability for Daniels' negligent design claim under the design standards exception to the Georgia Tort Claims Act (OCGA § 50-21-24 (10)). This exception provides that the State has no liability for "[t]he plan or design for construction of or improvement to highways . . . where such plan or design is prepared in substantial compliance with generally accepted engineering or design standards *in effect at the time of preparation of the plan or design*[.]" (Emphasis supplied.) OCGA § 50-21-24 (10).

In this case, the record shows that the design plans for the highway intersection where the accident occurred were completed on March 11, 1940. Accordingly, the DOT would not be liable to Daniels if the intersection's design substantially complied with the generally accepted engineering or design standards in effect on March 11,

1940. See *Dept. of Transp. v. Brown*, 218 Ga. App. 178 (1) (460 SE2d 812) (1995); *Lynch v. Ga. Power Co.*, 185 Ga. App. 256 (1) (363 SE2d 777) (1987).

In support of its motion, the DOT presented the affidavit of a transportation engineer who stated that there were no published design guidelines in existence when the highway in this case was designed, and that the first national design guide was approved on October 7, 1940. He concluded that the highway intersection "did not violate any accepted national standards . . . [and that the design] must have been a common intersection design in Georgia during this period since there are so many of these intersections in existence in Georgia."

In response to the DOT's evidence, Daniels was required to submit expert testimony or some other competent evidence showing "that the plan or design was not prepared in substantial compliance with generally accepted engineering or design standards at the time [the] plan was prepared." *Brown*, supra at 179. Daniels submitted the affidavit and deposition testimony of an engineer, John Glennon, who was familiar with the design standards in effect when the highway plans in this case were finalized. In his affidavit, Glennon stated that based on his education, background, and experience, the design of the highway intersection was not in substantial compliance with generally accepted engineering or design standards in effect at the time. However, in his deposition, Glennon testified that his education, background, experience, and opinion in this case concerning the specific standards applicable to the highway intersection were based on one document titled "A Policy On Intersections At Grade." The record shows that this document and its standards were not approved until October 7, 1940, approximately seven months *after* the design plans in this case were finalized.

Because the highway intersection was designed prior to the adoption of these guidelines, neither the guidelines nor Glennon's testimony "constitute[s] evidence which would be admissible for consideration on the issue of [the DOT's] negligence. [Cit.]" *Lynch*, supra at 258; OCGA § 50-21-24 (10). Compare *Brown*, supra (although no published standards existed, evidence showed that plan deviated from generally accepted engineering and design standards). Because Daniels failed to point to any evidence creating a triable issue on this claim, the trial court did not err in granting summary judgment. See *Papera*, supra.

2. Neither is the DOT liable to Daniels for its alleged failure to upgrade the highway intersection. Daniels contends that the intersection's design created obvious safety hazards under current design standards and that the DOT therefore had a duty to upgrade the intersection to meet those standards. In promulgating the Georgia

Tort Claims Act, the legislature expressly intended that "State government should not have the duty to do everything that might be done. Consequently, it . . . declared to be the public policy of this state that the state shall only be liable in tort actions within the limitations of [the Act] and in accordance with the fair and uniform principles established in [the Act]." OCGA § 50-21-21 (a). As stated in Division 1, the Georgia Tort Claims Act exempts the DOT from liability for highway design deficiencies where the highway was initially designed in substantial compliance with then existing design standards. OCGA § 50-21-24 (10). We find that the legislature intended the DOT's exemption from liability under OCGA § 50-21-24 (10) to include protection for its failure to upgrade a highway to meet current design standards.

In determining the extent of the DOT's liability under the Georgia Tort Claims Act, we must construe its provisions in a manner that will uphold it in every part. *Exum v. City of Valdosta*, 246 Ga. 169 (1) (269 SE2d 441) (1980). Under this rule of construction, we find that if the DOT is exempt from liability for its initial design of a highway under the Georgia Tort Claims Act, it would make little sense to permit liability for failing to change that initial design. Allowing liability in such cases would effectively eliminate the protection provided the DOT under OCGA § 50-21-24 (10). Accordingly, we must conclude that the only reasonable construction of OCGA § 50-21-24 (10) prohibits the claim asserted here. Thus, the trial court did not err in granting the DOT summary judgment.

*Judgment affirmed. Johnson, J., concurs. McMurray, P. J., concurs in the judgment only.*

DECIDED JUNE 19, 1996 —
RECONSIDERATION DENIED JULY 11, 1996 — ■

*W. Earl McCall*, for appellant.

*Michael J. Bowers, Attorney General, George P. Shingler, Deputy Attorney General, Eric A. Brewton, C. Latain Kell, Assistant Attorneys General*, for appellee.