A04A1626. STEELE et al. v. GEORGIA DEPARTMENT OF TRANSPORTATION.
(609 SE2d 715)

ANDREWS, Presiding Judge.

Roger Steele died in a collision between his vehicle and another vehicle at the intersection of State Route 16 and a county-built road in Butts County. Donna Steele, as his surviving spouse and the administratrix of his estate, brought a wrongful death suit against the Georgia Department of Transportation (DOT) pursuant to the Georgia Tort Claims Act (GTCA). She alleged that the DOT's negligent design of State Route 16 proximately caused the fatal accident. Ms. Steele appeals from the trial court's order granting the DOT's motion to dismiss the suit on the basis that the court lacked subject matter jurisdiction because the DOT was entitled to sovereign immunity from the suit under the GTCA. For the following reasons, we affirm the trial court's dismissal of the suit in part and reverse in part.

The DOT, as a department of the State of Georgia, was sued pursuant to the GTCA (OCGA § 50-21-20 et seq.), which waives the state's sovereign immunity from suit subject to certain limitations and exceptions. Section 50-21-24 of the GTCA sets forth exceptions to

---

[1] *Brown v. Premiere Designs*, 266 Ga. App. 432, 434 (597 SE2d 466) (2004).

[2] Id.

the state's waiver of sovereign immunity, so to the extent an exception under this Code section applied to the claims made against the DOT, the DOT was immune from suit, and the trial court lacked subject matter jurisdiction to try the claims. *Dept. of Transp. v. Dupree*, 256 Ga. App. 668, 670-674 (570 SE2d 1) (2002). Ms. Steele's wrongful death suit alleged that the DOT was negligent in various ways, but she conceded in the trial court that exceptions set forth in OCGA § 50-21-24 expressly rendered the DOT immune from suit on all of her claims except the two negligent design claims at issue in this appeal. Accordingly, it is undisputed that the trial court correctly dismissed other claims in the wrongful death suit alleging that the DOT negligently failed to install a flashing beacon or traffic light at the intersection; negligently posted a 55 miles per hour speed limit on Route 16, and negligently allowed placement of a utility pole within the right-of-way for Route 16.

The fatal accident occurred on December 27, 2000, as Mr. Steele was traveling east on State Route 16 on a curve approaching the intersection with the county road. Mr. Steele had the right of way through the intersection. Accordingly, there were no signals at the intersection controlling traffic on Route 16, but stop signs controlled vehicles approaching the intersection on the county road. A driver traveling south on the county road stopped at the stop sign, then crossed the intersection as Mr. Steele's vehicle approached around the curve. The two vehicles collided in the intersection with the southbound vehicle striking the passenger side of Mr. Steele's vehicle and causing Mr. Steele's vehicle to go out of control off the southern shoulder of Route 16, where it overturned and struck a utility pole.

Ms. Steele alleged that the DOT negligently designed Route 16 in two ways that proximately caused the accident. First, she claimed that, because of the curve in the road approaching the intersection, there was inadequate sight distance to allow the driver crossing Route 16 from the stop sign to see Mr. Steele's vehicle coming around the curve in sufficient time to allow a safe crossing. Second, she claimed that the slope on the southern shoulder of Route 16 where Mr. Steele's vehicle went out of control and overturned was excessively steep.

In its motion to dismiss, the DOT asserted that the highway plan or design exception to the waiver of sovereign immunity in OCGA § 50-21-24 (10) rendered it immune from these negligent design claims. The exception in OCGA § 50-21-24 (10) provides that:

> The state shall have no liability for losses resulting from . . . [t]he plan or design for construction of or improvement to highways, roads, streets, bridges, or other public works

where such plan or design is prepared in substantial compliance with generally accepted engineering or design standards in effect at the time of preparation of the plan or design.

The DOT's motion to dismiss for lack of subject matter jurisdiction based on immunity granted under this exception was brought pursuant to OCGA § 9-11-12 (b) (1) and presented the issue of whether the DOT waived sovereign immunity by failing to conform the plan or design for construction or improvement to Route 16 to then existing engineering or design standards. As the party seeking to benefit from the DOT's waiver of sovereign immunity, Ms. Steele had the burden of proof to establish the waiver, and the trial court's pre-trial determination of factual issues necessary to decide the OCGA § 9-11-12 (b) (1) motion is tested on appeal under the any evidence rule. *Dupree*, 256 Ga. App. at 671-674; *Conrad v. Conrad*, 278 Ga. 107, 109 (597 SE2d 369) (2004); OCGA § 9-11-12 (d).

State Route 16 was originally planned and designed in 1937, and Ms. Steele does not claim that the 1937 plan or design was not in substantial compliance with the generally accepted engineering or design standards in effect at that time.[1] Accordingly, the exception set forth in OCGA § 50-21-24 (10) rendered the DOT immune from liability for its initial design of Route 16 and from any claim that it failed to upgrade Route 16 to meet current design standards. *Cox*, 246 Ga. App. at 223. Ms. Steele's negligent design claims, however, are based on the allegation that the DOT elected to make subsequent improvement to Route 16 and failed to conform the improvement to then existing design standards. As to those claims, the exception in OCGA § 50-21-24 (10) provides immunity only to the extent that the DOT subsequently improved Route 16 in substantial compliance with generally accepted engineering or design standards existing at the time of preparation of the improvement plan or design. *Cox*, 246 Ga. App. at 223-224.

The record shows that the DOT improved Route 16 prior to the accident. In 1937, Route 16 was a two-lane highway consisting of two ten-foot travel lanes with a six-foot grassed shoulder outside each

---

[1] The original design of Route 16 did not show an intersection with the county road at issue. Although the DOT subsequently allowed Butts County to build the road which crossed Route 16 and created the intersection at issue, Ms. Steele does not dispute that the DOT is immune from liability for permitting the county road to cross Route 16 under the exception set forth in OCGA § 50-21-24 (9), which provides that the state has no liability for losses resulting from "[l]icensing powers or functions, including, but not limited to, the issuance, denial, suspension, or revocation of or the failure or refusal to issue, deny, suspend, or revoke any permit, license, certificate, approval, order, or similar authorization." *Dept. of Transp. v. Cox*, 246 Ga. App. 221, 224 (540 SE2d 218) (2000).

lane. In a 1977-78 improvement, the DOT widened the two travel lanes from ten feet to twelve feet, and in a 1984-85 improvement, the DOT added a two-foot paved shoulder outside each lane. As a result of these improvements, at the time of the accident, Route 16 consisted of two twelve-foot travel lanes bordered by two feet of paved shoulder and five feet of grassed shoulder outside each lane. Thus, the evidence showed that the DOT widened the original distance across the travel lanes at the intersection by four feet, and widened the shoulder to shoulder cross section of Route 16 from the original distance of thirty-two feet to a distance of thirty-eight feet. The record further shows that, prior to the accident, the DOT made another improvement to Route 16 for the specific purpose of addressing sight distance design at the intersection. The DOT produced expert testimony showing that, in compliance with the adoption of the 1988 edition of the Manual of Uniform Traffic Control Devices (MUTCD), it added warning signs pursuant to MUTCD in advance of the curve and intersection on the eastbound travel lane of Route 16. The signs warned drivers approaching the curve leading to the intersection that there was limited sight distance at the intersection, and included a speed advisory sign for drivers to reduce speed from the posted 55 miles per hour speed limit to 35 miles per hour.

Ms. Steele contended that the design exception set forth in OCGA § 50-21-24 (10) provided no immunity from her sight distance design claim because the improvement made by the DOT on Route 16 altered the intersection in a way which affected the original sight distance design and required that, as part of the improvement plan or design, the DOT conform sight distance with design standards in effect at the time of the improvement. She contended that, when the DOT widened the travel lanes on Route 16 and thereby increased the distance and the time drivers had to travel across the intersection from the stop sign, this necessarily required an increase in the amount of sight distance needed by drivers to safely cross the widened intersection. She argued that, because the scope of the widening improvement affected sight distance design at the intersection, this required that the DOT not only widen the lanes in conformity with then existing standards for widening, but also required the DOT to conform sight distance design at the intersection with then existing sight distance standards. In support of this claim, Ms. Steele provided expert testimony that, at the posted speed limit of 55 miles per hour on Route 16, sight distance at the widened intersection was inadequate under design standards of the American Association of State Highway and Transportation Officials (AASHTO) existing at the time the lanes were widened.

As to her shoulder slope design claim, Ms. Steele produced expert testimony that the slope of the shoulder on Route 16 where Mr. Steele

lost control of his car and overturned was necessarily moved and reconstructed during the DOT improvement which increased the shoulder to shoulder cross section of Route 16 from the original distance of 32 feet to 38 feet. The expert's written report, which was based on a personal inspection of the accident site, stated that the shoulder area where Mr. Steele's car left Route 16 was excessively steep under AASHTO slope design standards in effect when the improvement was made. In deposition testimony, the expert identified a photograph showing tire tracks marking the path that Mr. Steele's car took off the paved area of Route 16 and across the section of shoulder slope at issue. Finally, the expert stated that the reconstructed slope in that area was steeper than the slope in the original design of Route 16 and that, under AASHTO design standards existing when the slope was reconstructed, it was excessively steep and was defined as a critical slope — one on which a vehicle was likely to overturn.

In response to the sight distance design claim, the DOT made two arguments. First, the DOT contended that, because the widening improvement to Route 16 was moderate in scope, it did not substantially affect the original sight distance design at the intersection. Therefore, to obtain immunity under OCGA § 50-21-24 (10) it was not necessary for the DOT to conform sight distance design to then existing standards as part of the widening improvement. Second, the DOT contended that, even if to obtain immunity under OCGA § 50-21-24 (10) it was necessary to conform sight distance design to standards existing at the time of the widening improvement, but it failed to do so, the DOT subsequently improved Route 16 and conformed sight distance design at the intersection to then existing design standards. According to the DOT, it did so not by increasing actual sight distance at the intersection, but by placing signs on Route 16 pursuant to MUTCD, which warned of limited sight distance at the intersection and advised speed reduction to 35 miles per hour. In support of this argument, the DOT provided expert testimony that, because intersection sight distance requirements correspond directly with design speed, the placement of the warning signs pursuant to MUTCD was sufficient to satisfy current AASHTO sight distance design standards at the intersection for vehicles approaching on the curve at the advised speed of 35 miles per hour.

We have previously addressed immunity extended under OCGA § 50-21-24 (10) in the context of the DOT's contention that a road widening improvement was too moderate to require the DOT to address and upgrade other road design issues as part of the improvement. We held that, to acquire immunity extended under OCGA § 50-21-24 (10), a plan or design for moderate improvement for striping, widening, or resurfacing an existing road must conform with

then existing standards for striping, widening, or resurfacing, but the plan or design is not required to address other road design issues outside the scope of the improvement. *Cox*, 246 Ga. App. at 224; *Murray v. Dept. of Transp.*, 240 Ga. App. 285, 287 (523 SE2d 367) (1999). The principle established in *Cox* and *Murray* is that, in some cases, a plan or design for improvement to a road, such as moderate road widening, is so limited in scope that it does not alter the geometrics of the road in a way that substantially affects other design issues such as intersection sight distance or shoulder slope. In those cases, an improvement plan or design need not address road design issues which are not substantially affected and are outside the scope of the improvement. *Cox*, 246 Ga. App. at 224. Where, however, a plan or design for improvement, such as road widening, alters the geometrics of the road in a way that substantially affects other road design issues, then the design issues so affected are within the scope of the improvement plan or design. Accordingly, when the DOT undertakes road improvement, immunity under OCGA § 50-21-24 (10) is extended for all aspects of the improvement within the scope of the improvement plan or design which are done in substantial compliance with then existing design standards, but no such immunity is extended for a design issue within the scope of the improvement which the DOT does not substantially conform to then existing design standards.

It follows that, in order to decide the immunity issue presented by the DOT's motion to dismiss, one issue confronting the trial court was whether or not sight distance design and shoulder slope design were within the scope of the widening improvement made by the DOT to Route 16. The trial court granted the DOT's motion to dismiss on the basis that the highway plan or design exception in OCGA § 50-21-24 (10) rendered the DOT immune from both the sight distance design claim and the shoulder slope design claim, and therefore the court lacked subject matter jurisdiction to try the claims. In so ruling, the trial court found that neither sight distance design nor shoulder slope design was within the scope of the widening improvement.

On the present record, we find no construction of the evidence which could support the trial court's ruling that sight distance design at the intersection was not within the scope of the widening improvement. Although we found that other design issues were outside the scope of the moderate road widening in *Murray*, supra, there was no evidence in that case that the widening altered road geometrics in a way that substantially affected other road design issues. *Cox*, 246 Ga. App. at 223-224. The present record, however, contains evidence that the road widening adversely affected sight distance design at the intersection by increasing the distance and the time necessary for

drivers to cross the intersection, thereby increasing the sight distance necessary for drivers to safely cross in front of traffic rounding the adjacent curve. Even though expert testimony produced by the DOT concluded that the widening improvement made to Route 16 had the effect of increasing sight distance at the curve to compensate for the added crossing distance at the intersection, this testimony did not show that the increase conformed sight distance to then existing design standards. Moreover, this testimony provided additional support for the conclusion that the improvement affected sight distance design at the intersection, regardless of whether sight distance was increased or decreased by the widening. Applying the any evidence standard on the present record, we find that all the evidence, including expert testimony presented by the DOT, supported the conclusion that the DOT widening improvement to Route 16 substantially affected sight distance design at the intersection. Therefore sight distance design was within the scope of the DOT improvement, and the trial court erred by ruling to the contrary.

Ms. Steele contends that this finding compels the conclusion that the DOT was not entitled to immunity from the sight distance design claim under OCGA § 50-21-24 (10) because the evidence shows that the plan or design of the DOT widening improvement failed to conform sight distance at the intersection to then existing design standards. However, in the present case the DOT presented expert testimony describing an additional improvement it made to Route 16 which specifically addressed sight distance design at the intersection prior to the accident. According to the DOT's expert, placement of signs on Route 16 in compliance with the adoption of the 1988 edition of MUTCD warning of limited sight distance and advising speed reduction conformed sight distance design at the intersection to then existing AASHTO sight distance design standards for vehicles approaching the intersection at the advised speed of 35 miles per hour. This testimony provided evidentiary support for the trial court's conclusion that this additional improvement was sufficient to conform sight distance design at the intersection to generally accepted engineering or design standards existing at that time. *Dept. of Transp. v. Brown*, 267 Ga. 6, 7-8 (471 SE2d 849) (1996); *Dept. of Transp. v. Mikell*, 229 Ga. App. 54, 57-58 (493 SE2d 219) (1997). We find that, in considering whether the DOT was entitled to immunity under OCGA § 50-21-24 (10) "for losses resulting from . . . [t]he plan or design for . . . improvement" to Route 16, the trial court properly considered all relevant improvement to Route 16 made by the DOT prior to the alleged losses. Accordingly, under the any evidence standard, we affirm the trial court's ruling that the DOT was immune

from suit on the sight distance design claim, and that the trial court lacked subject matter jurisdiction on this claim. *Dupree*, 256 Ga. App. at 671-674.

We also find an absence of evidence in the record to support the trial court's ruling that shoulder slope design was not within the scope of the DOT improvement to Route 16. There was evidence that, by increasing Route 16's shoulder to shoulder cross section to a distance of 38 feet from the original design of 32 feet, the DOT necessarily moved and reconstructed the shoulder slope in either the 1977-78 improvement or the 1984-85 improvement or both. This was evidence that the DOT improvement to Route 16 substantially affected shoulder slope design, and that this design issue was also within the scope of the improvement. Contrary to the trial court's finding, there was also evidence showing that, in the area where Mr. Steele swerved off Route 16, the altered shoulder slope was too steep under AASHTO design standards in effect when the slope was altered. On the present facts, the trial court erred by ruling that the DOT was immune under OCGA § 50-21-24 (10) from the shoulder slope design claim, and that the court lacked subject matter jurisdiction on this claim.

Finally, the trial court also erred by finding that the DOT was immune under OCGA § 50-21-24 (10) from the shoulder slope design claim on the basis that there was no evidence establishing that the excessive steepness of the shoulder slope was a proximate cause of the accident. Although the DOT may assert the absence of a causal connection between negligent slope design and the fatal accident in its defense of the claim, this issue was not relevant to whether the DOT was immune from the claim under OCGA § 50-21-24 (10).

Accordingly, the trial court's order granting the DOT's motion to dismiss is reversed as to the claim for negligent shoulder slope design and affirmed as to all other negligence claims.

*Judgment affirmed in part and reversed in part. Miller and Ellington, JJ., concur.*

DECIDED JANUARY 24, 2005.

*Cathey & Strain, Dennis T. Cathey, David A. Sleppy, Matthew T. Allen*, for appellants.

*Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Loretta L. Pinkston, Robert C. Edwards, Assistant Attorneys General*, for appellee.