A06A1655. MURRAY et al. v. GEORGIA DEPARTMENT OF TRANSPORTATION et al.
A06A1656. MANNING et al. v. MURRAY et al.
(644 SE2d 290)

ANDREWS, Presiding Judge.

Robert Daniel Murray IV died as a result of injuries he suffered when the automobile in which he was a passenger was struck by another automobile at the intersection of State Route 8 with Broad Street/McMillan Road in the City of Dacula in Gwinnett County. Murray's parents and his estate brought suit to recover for wrongful death, pain and suffering, and other expenses alleging that the fatal accident was caused by the negligence of the Georgia Department of Transportation (State DOT), various employees of the Gwinnett County Department of Transportation (Gwinnett County DOT) in their individual capacities, CSX Transportation, Inc. (CSX), and Joe Gregory, the driver of the automobile which struck the automobile

occupied by Murray.[1] The trial court dismissed the State DOT from the suit on the basis of sovereign immunity, granted summary judgment in favor of the Gwinnett County DOT employees on the basis of official immunity, and granted summary judgment in favor of CSX finding there was no basis for the negligence claim. The plaintiffs below appeal from these rulings in Case No. A06A1655. In Case No. A06A1656, two of the Gwinnett County DOT employees cross-appeal from the trial court's denial of their motion to disqualify plaintiffs' counsel. For the following reasons, we affirm the trial court's rulings in favor of the defendants below in Case No. A06A1655 and dismiss as moot the cross-appeal in Case No. A06A1656.

### Case No. A06A1655

1. On the date of the accident, traffic on State Route 8 had the right-of-way at the intersection, and stop signs controlled automobiles approaching the intersection on Broad Street from the west and on McMillan Road from the east. The automobile in which Murray was a passenger was driven at the time of the accident by Gabriele Bernhard, who approached State Route 8 on McMillan Road on the east side of the intersection and stopped at the stop sign. Northbound traffic was backed up and stopped on State Route 8, but southbound traffic was still moving across the intersection. When northbound traffic stopped at the intersection, Bernhard pulled slowly into the intersection across the northbound lane of State Route 8 and stopped in the intersection before attempting to cross the southbound lane. Bernhard testified that she stopped because a van in a turn lane on State Route 8 blocked her view of approaching southbound traffic. At that point, Bernhard said the driver of a vehicle at the stop sign on Broad Street on the west side of the intersection "waved me over, was saying it was okay for me to come on over, and that's when I went." Bernhard testified that, even though she was blocked from seeing traffic approaching in the southbound lane, she drove into the southbound lane because "I was trusting her that she said it was okay to go." When Bernhard attempted to drive across the southbound lane of traffic, her automobile was struck on the passenger side by Gregory's automobile traveling southbound with the right-of-way on State Route 8.

On these facts, the plaintiffs alleged that the absence of a traffic signal at the intersection was a proximate cause of the accident, and that there was no traffic signal when the accident occurred on August

---

[1] Gregory was later dismissed from the suit with prejudice by consent of the parties.

22, 2000, because the State DOT, the Gwinnett County DOT employees, and CSX negligently delayed installation of a traffic signal after authorization for a signal was issued by the State DOT on August 25, 1999. The record shows that, pursuant to a request from the Gwinnett County DOT, the State DOT issued a "Traffic Signal Authorization" on August 25, 1999, which approved the use of a green/yellow/red-sequence stop and go traffic signal on State Route 8 at the intersection. The State DOT authorization was subject to conditions that State-supplied traffic signal equipment would be installed, operated and maintained by the Gwinnett County DOT according to State DOT standards, and that the signal would be installed with a railroad preemption device to coordinate operation of the signal with operation of the gates and flashing lights at the CSX railroad grade crossing located at the intersection of the CSX railroad tracks and Broad Street just west of the intersection of Broad Street and State Route 8. The purpose of the preemption device was to ensure that, when a train approached the grade crossing at Broad Street, the traffic signal would be preempted so that it operated to keep traffic from being stopped on or directed toward the railroad tracks while a train was passing.

2. We find no merit in the plaintiffs' claim that the trial court erred by granting the State DOT's motion to dismiss on the basis of sovereign immunity. As a department of the State of Georgia, the State DOT was sued pursuant to the Georgia Tort Claims Act (GTCA), OCGA § 50-21-20 et seq. Under the GTCA, sovereign immunity from suit granted to the State and its departments by the Georgia Constitution is waived subject to certain limitations and exceptions set forth in the GTCA. *Ga. Forestry Comm. v. Canady*, 280 Ga. 825-826 (632 SE2d 105) (2006). To the extent the GTCA sets forth an exception to the waiver of sovereign immunity, the State and its departments remain immune from suit, and any suit brought to which an exception applies is subject to dismissal pursuant to OCGA § 9-11-12 (b) (1) for lack of subject matter jurisdiction. *Steele v. Ga. Dept. of Transp.*, 271 Ga. App. 374-376 (609 SE2d 715) (2005). The party seeking to benefit from the waiver of sovereign immunity has the burden of proof to establish waiver, and the trial court's pre-trial ruling on factual issues necessary to decide the OCGA § 9-11-12 (b) (1) motion is reviewed on appeal under the any evidence rule. *Dept. of Transp. v. Dupree*, 256 Ga. App. 668, 671-674 (570 SE2d 1) (2002); *Conrad v. Conrad*, 278 Ga. 107, 109 (597 SE2d 369) (2004); *Steele*, 271 Ga. App. at 376; OCGA § 9-11-12 (d).

In the present case, the State DOT moved for dismissal for lack of subject matter jurisdiction asserting that it was entitled to sovereign immunity from the plaintiffs' claims on the basis of two GTCA

exceptions to waiver of immunity set forth in OCGA § 50-21-24. First, subsection (9) of OCGA § 50-21-24 provides that

> [t]he state shall have no liability for losses resulting from . . . [l]icensing powers or functions, including, but not limited to, the issuance, denial, suspension, or revocation of or the failure or refusal to issue, deny, suspend, or revoke any permit, license, certificate, approval, order, or similar authorization.

This exception granted the State DOT immunity from any claim that it was liable for "losses resulting from" issuance, denial, suspension, or revocation of an authorization (or the failure or refusal to issue, deny, suspend, or revoke an authorization) to install a traffic signal at the intersection. *Dept. of Transp. v. Cox*, 246 Ga. App. 221, 224-225 (540 SE2d 218) (2000). Thus, the exception grants broad immunity for losses resulting from virtually any action the State DOT could take regarding the authorization. Nevertheless, the plaintiffs contend that this section does not provide immunity from their claim that, after the State DOT issued the traffic signal authorization on August 25, 1999, it negligently failed to take prompt action to have the signal installed prior to the fatal accident on August 22, 2000. Aside from the fact that the traffic signal authorization issued by the State DOT to the Gwinnett County DOT did not require that a signal be installed at the intersection or impose any time limit on installation, any claim that, after the authorization was issued, the State DOT negligently failed to act quickly enough pursuant to the authorization seeks to impose liability on the State DOT for "losses resulting from" issuance of the authorization. The immunity granted by subsection (9) for "losses resulting from" the issuance of the authorization is broad enough to include immunity from the plaintiffs' claim that the State DOT is liable for losses resulting from a negligent failure to install the signal more quickly after the authorization was issued. Accordingly, we find that the trial court correctly concluded that the exception set forth in OCGA § 50-21-24 (9) rendered the State DOT immune from this claim. Second, subsection (10) of OCGA § 50-21-24 provides that

> [t]he state shall have no liability for losses resulting from . . . [t]he plan or design for construction of or improvement to highways, roads, streets, bridges, or other public works where such plan or design is prepared in substantial compliance with generally accepted engineering or design standards in effect at the time of preparation of the plan or design.

This exception rendered the State DOT immune from a claim that the fatal accident was proximately caused by a deficiently designed intersection on State Route 8, as long as the intersection was initially designed in substantial compliance with existing engineering or design standards. *Cox*, 246 Ga. App. at 223; *Steele*, 271 Ga. App. at 376. It also rendered the State DOT immune from any claim that it proximately caused the fatal accident because it negligently failed to upgrade the design of the intersection to higher standards to make it safer. *Cox*, 246 Ga. App. at 223; *Daniels v. Dept. of Transp.*, 222 Ga. App. 237, 238-239 (474 SE2d 26) (1996). The plaintiffs make no claim that, because the intersection was designed to be controlled with stop signs instead of a traffic signal, it failed to comply with engineering or design standards existing when it was designed. Nevertheless, the plaintiffs seek to impose liability on the State DOT by alleging that a proximate cause of the fatal accident was the negligent failure to timely install a traffic signal at the intersection to make it safer. This is essentially a claim that the State DOT is liable for losses resulting from an alleged deficiency in the design of the intersection and for the negligent failure to make the intersection safer by upgrading the design prior to the fatal accident. In the absence of any evidence that the design of the intersection failed to comply with then existing engineering and design standards, the trial court correctly found that the exception set forth in OCGA § 50-21-24 (10) rendered the State DOT immune from this claim. It follows that the trial court correctly granted the State DOT's motion to dismiss for lack of subject matter jurisdiction based on sovereign immunity.[2]

3. Contrary to the plaintiffs' contention, the trial court correctly granted summary judgment to the Gwinnett County DOT employees on the basis of official immunity. The plaintiffs sued various Gwinnett County DOT employees in their individual or personal capacities claiming that, after the State DOT authorized the Gwinnett County DOT to install a traffic signal at the intersection, the negligence of these employees caused or contributed to the failure to install the signal prior to the fatal accident. Because they were sued as public employees of the Gwinnett County DOT in their individual or personal capacities, all the employees moved for summary judgment on the basis that they were entitled to official immunity from suit granted to such employees under the Georgia Constitution. *Gilbert v. Richardson*, 264 Ga. 744, 750, 752-753 (452 SE2d 476) (1994); *Coffey v. Brooks County*, 231 Ga. App. 886, 888 (500 SE2d 341) (1998), rev'd on other grounds, *Rowe v. Coffey*, 270 Ga. 715 (515 SE2d 375) (1999);

---

[2] We need not address the trial court's separate grant of summary judgment in favor of the State DOT.

Ga. Const. of 1983, Art. I, Sec. II, Par. IX (d). The trial court granted summary judgment on the basis of official immunity to all the Gwinnett County DOT employees named as defendants, but the plaintiffs appeal only from the grant of summary judgment to employees Brian Allen, Martin Kim Conroy, and Charles R. Bailey.

> The doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity. Qualified immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption. Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure. The rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight.

(Citations and punctuation omitted.) *Cameron v. Lang*, 274 Ga. 122, 123 (549 SE2d 341) (2001). It follows that Allen, Conroy, and Bailey were subject to suit for alleged negligent failure to perform ministerial acts or for acts done with actual malice or an intent to injure, but they were entitled to official immunity from suit for the alleged negligent performance of discretionary acts taken within the scope of their authority. Id. at 124. Because the plaintiffs do not allege that any Gwinnett County DOT employee acted with actual malice or an intent to injure, the issue is whether the alleged negligence involved discretionary or ministerial acts.

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed. Procedures or instructions adequate to cause an act to become merely ministerial must be so clear, definite and certain as merely to require the execution of a relatively simple, specific duty.

(Citations and punctuation omitted.) *Banks v. Happoldt*, 271 Ga. App. 146, 149 (608 SE2d 741) (2004). Moreover, while a discretionary act requires deliberation and the exercise of judgment, "a ministerial

act is one that is a mandatory fixed obligation for which mandamus will lie to compel performance." (Citations and punctuation omitted.) *Common Cause/Ga. v. City of Atlanta*, 279 Ga. 480, 482 (614 SE2d 761) (2005); *Henderman v. Walton County Water & Sewerage Auth.*, 271 Ga. 192, 193 (515 SE2d 617) (1999). To prove that an employee's act was ministerial because a mandamus could have been successfully sought to compel performance, it is insufficient to show that the employee was authorized to perform the act — "the law must not only authorize the act be done, but must require its performance." (Citation and punctuation omitted.) *Common Cause/Ga.*, 279 Ga. at 483.

Nothing in the record shows that the "Traffic Signal Authorization" issued by the State DOT at the request of the Gwinnett County DOT required the Gwinnett County DOT to install a traffic signal at the intersection or to adhere to any time limits for installation of a signal.[3] The State DOT rather than the Gwinnett County DOT had the authority to install and maintain a traffic control signal at the intersection on State Route 8. OCGA §§ 32-6-50; 32-6-51 (a) (1). Responding to the Gwinnett County DOT's request for a traffic control signal at the intersection, the State DOT authorized the Gwinnett County DOT to install a signal at the intersection under the conditions set forth in the authorization.[4] None of those conditions required the installation or set time limits on installation. Because the Gwinnett County DOT was not required to install the traffic signal at the intersection or adhere to any time limitation for installation, any action taken by Allen, Conroy, and Bailey to install the traffic signal necessarily entailed discretionary acts rather than ministerial acts done to perform a specific duty or a mandatory fixed obligation for which mandamus would lie to compel performance. *Common Cause/Ga.*, 279 Ga. at 483; *Banks*, 271 Ga. App. at 149. Allen, Conroy, and Bailey were entitled to official immunity from suit for the alleged negligent performance of discretionary acts.

We find no merit to the plaintiffs' contention that the employees' actions were ministerial because the Gwinnett County DOT was required to ensure that the traffic signal was installed within the specific time limits set forth in OCGA § 32-6-200 (a). This Code

---

[3] The plaintiffs do not dispute the trial court's finding that the accident occurred at the intersection of a state highway (State Route 8) and two municipal streets (McMillan Road and Broad Street) located within the limits of the City of Dacula. There is no evidence in the record of any applicable state, county, or municipal regulation requiring installation of a traffic signal at the intersection or establishing a time limit for installation. See OCGA §§ 32-4-1; 32-4-42 (6); 32-4-92 (a) (10); 32-6-50; 32-6-51 (a) (1).

[4] Nothing prevented the State DOT from authorizing the Gwinnett County DOT to install a traffic control signal at the intersection on conditions agreed to by the parties. OCGA § 32-4-62; see *Comanche Constr. &c. v. Dept. of Transp.*, 272 Ga. App. 766, 770 (613 SE2d 158) (2005).

section deals with the installation of protective devices at railroad grade crossings and provides that the governmental entity with authority over the road where the crossing is located (state, county, or municipality) "may order the protection of a grade crossing by the installation of protective devices" whenever in the judgment of the governmental entity "such protection is reasonably necessary for the safety of the traveling public." OCGA § 32-6-200 (a). When an order is issued under the Code section, the section provides that "within 30 days thereafter the representatives of [the governmental entity] and of the railroad or railroads involved shall meet and, within 90 days, agree to a plan and specifications for the acquisition and installation of protective devices." The section further provides that, if no agreement is reached within 90 days, the governmental entity may order the railroad to proceed with acquisition and installation of approved protective devices, and that "[i]t shall be the duty of the railroad or railroads to proceed with acquisition and installation of protective devices within 60 days after receipt of an order to that effect and to complete such acquisition and installation within six months thereafter." OCGA § 32-6-200 (a).

The plaintiffs contend that these time limits applied to installation of the traffic signal because a condition for installation of the signal was the installation of the preemption device to coordinate operation of the signal with the operation of the existing protective devices (gates and flashing lights) at the adjacent CSX grade crossing. Assuming, as the plaintiffs contend, that the preemption device is a grade crossing protective device within the meaning of OCGA § 32-1-3 (23), we find that OCGA § 32-6-200 (a) has no application to the present case. OCGA § 32-6-200 applies on its face to situations where a governmental entity has identified an unsafe condition at a railroad grade crossing within its authority, and provides a method by which the governmental entity may issue orders which set in motion time limits for installation of protective devices to make the grade crossing safe. In the present case, there is no evidence that the CSX grade crossing was unsafe, and no governmental entity issued an order pursuant to OCGA § 32-6-200 (a). Rather, the record shows that installation of the preemption device was necessary only when the authorized traffic signal was installed.[5]

4. The trial court also correctly granted summary judgment in favor of CSX on the plaintiffs' claims that it negligently contributed to delay in the installation of the traffic signal. According to the

---

[5] We need not address the potential application of OCGA § 32-6-200 to require installation of a preemption device at a grade crossing in conjunction with installation of an adjacent traffic signal. In the present case, CSX cooperated with the Gwinnett County DOT to install the preemption device when the traffic signal was installed.

plaintiffs, after the State DOT authorized the Gwinnett County DOT to install the traffic signal along with the required preemption device to coordinate the signal with the CSX grade crossing, CSX negligently delayed completion of an agreement with the Gwinnett County DOT necessary for installation of the preemption device, which in turn delayed installation of the traffic signal until after the fatal accident. The plaintiffs do not contend that CSX refused to cooperate with the installation of a preemption device at the grade crossing, but that its failure to cooperate more quickly to reach a preemption device agreement with the Gwinnett County DOT contributed to delayed installation of the traffic signal.[6] As we held in Division 3, supra, the Gwinnett County DOT was not required to install the traffic signal pursuant to the State DOT authorization, nor were any time limits for installation imposed by the authorization or the provisions of OCGA § 32-6-200 (a). CSX was not authorized to install the preemption device connecting the grade crossing and traffic signal located on public streets, absent an order from a governmental entity pursuant to OCGA § 32-6-200 (a) or authority under the agreement negotiated with the Gwinnett County DOT. *Fortner v. Town of Register*, 278 Ga. 625, 626-627 (604 SE2d 175) (2004). The Gwinnett County DOT requested that CSX enter into a preemption device agreement, but there was no contractual, statutory or other legal obligation establishing a time frame for negotiations between CSX and the Gwinnett County DOT regarding the request.

On the present facts, we find that CSX owed no legal duty to Murray or other motorists to conclude a preemption device agreement with the Gwinnett County DOT within a time frame that may have enabled the Gwinnett County DOT to install a traffic signal at the intersection prior to the fatal accident. Liability in negligence is based partly on proof that the defendant proximately caused the alleged damage by breaching a standard of conduct raised by the law for the protection of others from unreasonable risks of harm. *Bradley Center, Inc. v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982). But before these elements of negligence liability can be considered, there must be proof that the defendant had a legal duty to conform to an applicable standard of conduct. Id.

---

[6] The record shows that, after CSX received a request from the Gwinnett County DOT in January 2000 for installation of a preemption device in connection with the grade crossing, CSX prepared designs for the device, prepared an estimate of the costs for construction and installation of the device, and drafted a preemption agreement to be executed by CSX and Gwinnett County. After the parties made changes to the agreement, it was submitted to the Gwinnett County Board of Commissioners in May 2000. The preemption device agreement was not executed by the parties until shortly after the fatal accident.

Before negligence can be predicated upon a given act, some duty to the individual complaining must be sought and found, the observance of which duty would have averted or avoided the injury or damage. No matter how innocent the plaintiff may be, he is not entitled to recover unless the defendant did something that it should not have done, or failed to do something that it should have done pursuant to the duty owed the plaintiff.

(Citations and punctuation omitted.) *City of Douglasville v. Queen*, 270 Ga. 770, 771 (514 SE2d 195) (1999). Whether or not a legal duty exists is a question of law for the court. *First Fed. Savings Bank &c. v. Fretthold*, 195 Ga. App. 482, 485 (394 SE2d 128) (1990). A legal duty sufficient to support liability in negligence is "either a duty imposed by a valid statutory enactment of the legislature or a duty imposed by a recognized common law principle declared in the reported decisions of our appellate courts." (Citation and punctuation omitted.) Id. at 484. We find no statutory enactment or common law principle that could be construed to impose a duty on CSX to act more quickly than it did to conclude a preemption device agreement with the Gwinnett County DOT. Even if it was foreseeable to CSX that acting quicker may have enabled the Gwinnett County DOT to install the traffic signal sooner, and that installation of the signal would have made the intersection safer for motorists, this did not impose a legal duty on CSX to act sooner to reach an agreement. CSX did nothing to create the alleged unsafe conditions at the intersection, and "[a] person is under no duty to rescue another from a situation of peril which the former has not caused." (Citations and punctuation omitted.) *Queen*, 270 Ga. at 773. The trial court correctly concluded that there was no basis to hold CSX liable for alleged negligence.

### Case No. A06A1656

5. The cross-appeal by Gwinnett County DOT employees, J. Robert Manning and Martin Kim Conroy, from the trial court's denial of their motion to disqualify plaintiffs' counsel is rendered moot by our affirmance of the grant of summary judgment in Division 3, supra. *Kaylor v. Atwell*, 251 Ga. App. 270, 274 (553 SE2d 868) (2001).

*Judgment affirmed in Case No. A06A1655 and appeal dismissed as moot in Case No. A06A1656. Barnes, C. J., and Ellington, J., concur in Case No. A06A1656 and concur specially in Case No. A06A1655.*

BARNES, Chief Judge, concurring specially in Case No. A06A1655, and concurring fully and completely in Case No. A06A1656.

While I concur in the result reached by the majority in Case No. A06A1655, I do not agree with all that is said.[7]

1. The trial court granted the DOT's motion to dismiss and signed its proposed order, which states that the department is entitled to sovereign immunity based on two exemptions to the immunity waiver contained in the Georgia Tort Claims Act. While I agree with the majority that the State is immune from this suit under OCGA § 50-21-24 (9), which exempts liability for losses resulting from its issuing a permit, I cannot agree that the State is immune under OCGA § 50-21-24 (10), which exempts liability for losses resulting from the plan, design, or improvement of roads. In this case, the plaintiffs make no claim regarding design defects. Their claim is that, once the DOT issued the traffic light permit to Gwinnett County, it negligently failed to ensure that the light was actually installed. Thus, the "design" exemption to the waiver of sovereign immunity does not apply in this case. Plaintiffs are not arguing that the State was negligent because it did not change the intersection design and install the traffic light sooner; they argue that, once the State determined that a light was needed, it had a duty to see that the light was installed.

2. I also agree that the trial court properly granted summary judgment to the Gwinnett County employees on the basis of official immunity, but not because the state permit did not specify a time limit or require the county to act. An action does not become discretionary solely because no fixed time frame exists within which it must be taken, and the county employees were required to install the light apart from any state directive or not, because the county wanted the light installed. Clearly, they had a duty to take some action toward the goal of installing the traffic light. After reviewing the depositions and affidavits in the record, however, I find no evidence that the employees negligently fulfilled their ministerial duty, and thus I concur with the affirmation of the trial court's order granting them summary judgment.

3. Finally, as to CSX, I also agree that it is entitled to summary judgment because the record established no negligence in its response to Gwinnett County's request to enter into a preemption agreement. I disagree that CSX had no legal duty to conclude the

---

[7] Because I do not agree with all that is said, this opinion is physical precedent only. Court of Appeals Rule 33 (a).

agreement at all, within any time frame; as with the county defendants, the absence of explicit time limits does not mean that any length of time would be permissible.

I concur fully and completely with the majority's finding in Case No. A06A1656 that the appeal is rendered moot by our affirmance of the summary judgment grant to the county employees.

I am authorized to state that Judge Ellington joins in this opinion.

DECIDED MARCH 19, 2007.

*Parks, Chesin, & Walbert, David F. Walbert, Thomas D. Trask, Peter F. Boyce*, for appellants (case no. A06A1655).

*O'Quinn & Cronin, Michael A. O'Quinn*, for appellants (case no. A06A1656).

*Fulcher & Hagler, Scott W. Kelly, O'Quinn & Cronin, Michael A. O'Quinn, Thurbert E. Baker, Attorney General, Kathleen M. Pacious, Deputy Attorney General, Loretta L. Pinkston, Senior Assistant Attorney General, Robert C. Edwards, Assistant Attorney General*, for appellees (case no. A06A1655).

*Parks, Chesin & Walbert, David F. Walbert, Thomas D. Trask, Peter F. Boyce, Catherine M. Packwood*, for appellees (case no. A06A1656).