**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

June 29, 2012

# In the Court of Appeals of Georgia

A12A0785. GEORGIA DEPARTMENT OF TRANSPORTATION
v. CROOMS et al.

ANDREWS, Judge.

While driving on Interstate 20 in Greene County in rainy weather, Estelle Meshal Crooms lost control of her vehicle, spun off the road across the grass right-of-way adjacent to the Interstate, and crashed into trees. Crooms was injured in the single-vehicle accident and a passenger in the vehicle, Croom's minor daughter, Courtney Crooms, was killed. Crooms and her husband, Derick Crooms, sued the Georgia Department of Transportation (DOT) for the wrongful death of their daughter, injuries suffered by Crooms in the accident, and loss of consortium. The complaint, brought pursuant to the Georgia Tort Claims Act (GTCA) (OCGA § 50-21-20 et seq.), alleged that Crooms lost control because her vehicle hydroplaned on

rain water, and that the DOT was responsible because it negligently failed to maintain Interstate 20 in a safe condition that would have prevented the accident.

Pursuant to OCGA § 9-11-12 (b) (1), the DOT moved prior to trial for dismissal of the complaint asserting that, because it had sovereign immunity from the suit under the GTCA, the court lacked subject matter jurisdiction. After considering evidence supporting and opposing the motion, the trial court ruled that the DOT was not immune and denied the motion. The DOT brought this direct appeal.[1] For the following reasons, we find the DOT was entitled to sovereign immunity and reverse.

Under the GTCA, sovereign immunity granted by the Georgia Constitution to the State and its departments, including the DOT, is waived subject to certain exceptions. *Ga. Forestry Comm. v. Canady*, 280 Ga. 825-826 (632 SE2d 105) (2006). To the extent the GTCA provides an exception to the waiver of sovereign immunity, the State and its departments remain immune from suit, and any suit to which an exception applies is subject to dismissal pursuant to OCGA § 9-11-12 (b) (1) for lack

---

[1] Although the order denying the DOT's motion pursuant to OCGA § 9-11-12 (b) (1) was not a directly appealable final judgment under OCGA § 5-6-34 (a) (1), we have jurisdiction to consider the DOT's direct appeal of this ruling pursuant to the collateral order exception to the final judgment rule. *Bd. of Regents of the Univ. System of Ga. v. Canas*, 295 Ga. App. 505, 506-507 (672 SE2d 471) (2009); *In re Paul*, 270 Ga. 680, 682-683 (513 SE2d 219) (1999).

2

of subject matter jurisdiction. *Steele v. Ga. Dept. of Transp.*, 271 Ga. App. 374-376 (609 SE2d 715) (2005). As the parties seeking to benefit from the waiver of sovereign immunity, the Croomses had the burden of establishing the waiver, and the trial court's pre-trial determination of factual issues necessary to decide the DOT's dismissal motion pursuant to OCGA § 9-11-12 (b) (1) is reviewed on appeal under the any evidence rule. *Dept. of Transp. v. Dupree*, 256 Ga. App. 668, 671 (570 SE2d 1) (2002); *Steele*, 271 Ga. App. at 376; OCGA § 9-11-12 (d).

In its dismissal motion, the DOT asserted that the GTCA exception to the waiver of immunity set forth in subsection (10) of OCGA § 50-21-24 established that it was immune from any claim based on the contention that it negligently failed to maintain Interstate 20 in a safe condition. Subsection (10) provides that

> [t]he state shall have no liability for losses resulting from . . . [t]he plan or design for construction of or improvement to highways, roads, streets, bridges, or other public works where such plan or design is prepared in substantial compliance with generally accepted engineering or design standards in effect at the time of preparation of the plan or design.

The exception set forth in OCGA § 50-21-24 (10) retained the DOT's immunity from a claim that an accident was proximately caused by the DOT's negligent failure to adequately design and construct a roadway, as long as the evidence shows that the

3

roadway was originally designed and constructed in substantial compliance with generally accepted engineering or design standards in effect at the time of the original design. *Dept. of Transp. v. Cox*, 246 Ga. App. 221, 223 (540 SE2d 218) (2000); *Steele*, 271 Ga. App. at 376. Although subsection (10) has no application to claims that the DOT negligently breached a duty to thereafter maintain the roadway in substantial compliance with the original design, it does render the DOT immune from claims that it negligently breached a duty to improve or upgrade the original design and construction of the roadway to current design standards to make it safer. *Cox*, 246 Ga. App. at 223; *Daniels v. Dept. of Transp.*, 222 Ga. App. 237, 238-239 (474 SE2d 26) (1996). The DOT may, of course, elect to improve a roadway by altering its original design and construction. In that event, subsection (10) retains the DOT's immunity from a claim that a proximate cause of an accident was the DOT's negligent failure to adequately design and construct the subsequent improvement to the roadway which altered the original design, as long as the evidence shows that the improvement was designed and constructed in substantial compliance with generally accepted engineering or design standards in effect at the time of the improvement. *Cox*, 246 Ga. App. at 223-224. Again, subsection (10) does not apply to claims that the DOT negligently breached a duty to thereafter maintain the roadway in substantial

4

compliance with its improved design, but it does render the DOT immune from claims that it has a duty to make further design improvements or upgrades to make the roadway safer. *Daniels*, 222 Ga. App. at 238-239; *Cox*, 246 Ga. App. at 223.

In the present case, there is no evidence that the DOT elected to improve Interstate 20 by altering its original design and construction, nor is there any evidence that the original design and construction of Interstate 20 was not in substantial compliance with generally accepted engineering or design standards in effect at the time of the original design. Accordingly, under OCGA § 50-21-24 (10), the DOT remained immune from any claim that the accident at issue was proximately caused by a negligent failure to adequately design or construct Interstate 20 in a manner that would have prevented Crooms's vehicle from hydroplaning on rain water. In fact, after the DOT moved for dismissal of the complaint on the basis of sovereign immunity provided under the design exception set forth in OCGA § 50-21-24 (10), the Croomses entered into a stipulation with the DOT stating that "the parties hereby stipulate that the Plaintiffs have not and shall not assert or allege any claim against the DOT for damages arising out of negligent design or professional negligence."

Rather, the Croomses contend that their complaint asserted ordinary negligence based on an allegation that the DOT negligently maintained Interstate 20 for which

OCGA § 50-21-24 (10) provides no immunity. In support of this contention, the Croomses provided evidence showing that Crooms was driving on a section of Interstate 20 that had just experienced heavy rainfall; that while traveling 12 to 14 miles per hour below the posted speed limit she suddenly felt her steering wheel pull to the right; that she lost control of her vehicle, spun off the roadway, and crashed; and that she lost control because her vehicle hydroplaned on rain water on the roadway. The Croomses produced a professional engineer who testified that, based on rainfall data at or before the time of the accident, and considering the flow of rain water on the cross slope of Interstate 20, Crooms lost control of her vehicle because she hydroplaned on rain water flowing off the roadway. Another professional engineer produced by the Croomses testified that the accident occurred near a point where Interstate 20 made a transition from a curve, where rain water flowed off a three degree cross slope on the roadway in one direction, to a straight section, where rainwater flowed off a one degree cross slope on the roadway in the opposite direction. According to this engineer, there was an area in the transition between the cross slopes where Interstate 20 had little or no cross slope, and this area created, not standing rain water, but an increased accumulation of flowing rain water that was a hydroplaning hazard. A police officer testified that, after a rain storm that occurred

6

about a year prior to the present accident, she observed a small puddle of rain water on Interstate 20 near the accident area. Because evidence showed that other vehicles being driven in similar rainy conditions in the same area of Interstate 20 had previously hydroplaned on rain water and crashed, the Croomses contended that the DOT knew or should have known that this area of Interstate 20 was unsafe in those conditions and negligently failed to take steps to make the roadway safe. The Croomses also produced expert engineering testimony that the DOT could have addressed the hydroplaning hazard and made this area of Interstate 20 safer: (1) by placing an asphalt overlay on the concrete road surface to absorb and disperse the rain water; or (2) by placing grooves in the roadway to channel and disperse the rain water; or (3) by erecting signs on the roadway warning motorists of the hazard.

Assuming that Crooms lost control of her vehicle and crashed because of a hydroplaning hazard on Interstate 20 that the DOT knew about or should have known about, there is no evidence in the record that the hazard existed because Interstate 20 had deteriorated in some manner so that it no longer substantially conformed to its original design and construction. The DOT provided evidence based on surveys made after Crooms's accident that showed the section of Interstate 20 at issue was originally designed and constructed, and thereafter maintained, in conformance with

the generally accepted design standards in effect at the time of the original design. Nevertheless, the Croomses contend in their brief on appeal that the DOT had a duty to address a hydroplaning hazard at the accident site as part of routine maintenance to restore Interstate 20 because "concrete surfaces such as the roadway at issue wear down and need to be restored." In support of their contention that Interstate 20 was worn down at the location of the accident and needed to be restored or maintained, the Croomses cited to a portion of an affidavit by one of their expert engineers filed in response to the DOT's motion to dismiss about a year after the engineer's deposition. The affidavit addresses the engineer's prior deposition testimony about an increased accumulation of rain water where Interstate 20 was designed with little or no cross slope, and the steps he recommended that the DOT take to make the surface of the roadway safer. The affidavit states:

> This area of accumulation of water on the roadway can and should have been remedied with minor, small scale, inexpensive maintenance activities affecting the surface of the roadway. This type of maintenance is regularly performed by or through the DOT maintenance department in response to areas of roadway that are accumulating water. The DOT regularly, as part of its ordinary maintenance of the state highway system, responds to problem areas where wrecks are occurring by implementing such small scale remedies, that in no way change the design of the roadway. Indeed, over time, the concrete surface of the

8

roadway wears down and needs to be restored when there is a history of accidents at a particular, discrete location. This is a maintenance function and the responsibility of the maintenance department of the DOT. While the geometric configuration of I-20 westbound in this area has not changed since it was built approximately forty years ago, there can be no question that the concrete surface was no longer in the same condition forty years later.

The affidavit does not state that the engineer saw any deteriorated or worn down areas of Interstate 20 at the accident location; it does not refer to any observation or measurement showing that Interstate 20 was deteriorated or worn down from its original design and construction at the accident location; and it concedes that Interstate 20's original geometric configuration remains unchanged at the accident location. Instead, the affidavit simply offers the engineer's opinion, based solely on a history of similar accidents at the accident location, that the roadway surface is worn down or deteriorated from its original design and construction, and needs maintenance to make it safe. The affidavit states that maintenance on the roadway is needed to restore Interstate 20 to its original condition, but the maintenance suggested in the affidavit is based on the same measures that the engineer suggested in his prior deposition – an asphalt overlay on the concrete surface to absorb and disperse rain water; grooves in the roadway to channel rain water; and signs to warn about the

hazard. Although characterized as "maintenance," these measures involve improvements to the original design of the roadway, not maintenance to restore the roadway to its original design and construction to remedy wear or deterioration.

In fact, the engineer's earlier deposition testimony confirms that he examined Interstate 20 at the accident site and reported no visible wear or deterioration in the roadway. In the deposition, the engineer testified that the construction of Interstate 20's concrete road surface according to the original design was completed in the early 1970s, and that he visited, surveyed, and photographed the roadway at the accident site in 2007. When asked at his deposition what observable evidence was present at the accident site on Interstate 20 to show that the roadway was unsafe, the engineer pointed only to: (1) the history of similar hydroplane accidents at that location, and (2) the original design of Interstate 20 in the transition area between cross slopes at that location. The engineer was specifically asked at his deposition: "Did you ever make a comparison with the designed cross slope for the same area that you surveyed and how it compared with what you surveyed out there? In other words, did you compare the design plans to what was ultimately constructed or what actually exists out there today?" He responded that he did not make that comparison; that he did not test the roadway for rain water flow; that he did not check the roadway for wear or

10

rutting caused by wheel tracks or for cracking; and that he did not test the roadway for "skid-resistance numbers or pavement texture." The engineer testified he was aware that in the late 1990s the DOT employed contractors to do routine maintenance work on the concrete surface of Interstate 20 in the subject area, and concluded that "if there were any construction defects in the material or surface itself, those kinds of work by contractors would be removing that anyway." The engineer further testified that the DOT's maintenance work did not change the design or geometrics of the roadway, and that he had no criticisms of the maintenance work. Finally, he was asked: "Isn't the problem with the roadway, whatever this problem is, a problem at the time it was built?" to which he responded, "Could have been. I don't have any information about that."

To the extent the engineer's earlier deposition testimony contradicted his affidavit opinion regarding the condition of the roadway at the accident site, the contradiction cannot be addressed by this Court under the contradictory testimony rule in *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27, 30 (343 SE2d 680) (1986). Under that rule, the portions of a party's contradictory testimony favorable to the party's claim are construed against the party. Id. But as the Supreme Court has made clear, the contradictory testimony rule does not apply to the testimony of a non-

11

party witness, so it does not apply to the engineer's expert testimony. *Thompson v. Ezor*, 272 Ga. 849, 851-853 (536 SE2d 749) (2000). Nevertheless, there are no facts in the record showing that Interstate 20 at the accident site was deteriorated or worn down so that the condition of the roadway did not substantially conform to its original design and construction. Where the evidence shows no substantial change in a roadway from an original design and construction which conformed to then-existing standards, a subsequent history of accidents at a particular location on the roadway imposes no legal duty on the DOT to take steps to make the roadway safer. *Cox*, 246 Ga. App. 222-224; OCGA § 50-21-24 (10). The sole basis for the expert engineer's opinion that the roadway at the accident site was "worn down" or "no longer in the same condition" and needed to be "restored" to its original condition was the history of similar accidents at the same location. We conclude that this opinion lacks foundation and is wholly speculative and conjectural in the absence of any facts showing that Interstate 20 had substantially deteriorated from its original condition. An expert opinion that is wholly speculative and conjectural is without foundation, has no probative value, and creates no factual issue. *Bankers Health & Life Ins. Co. v. Fryhofer*, 114 Ga. App. 107, 111 (150 SE2d 365) (1966); see *Drawdy v. Dept. of Transp.*, 228 Ga. App. 338, 341-342 (491 SE2d 521) (1997) (physical precedent).

As the record stands after disregarding the engineer's speculative opinion, there is no evidence showing that the DOT failed to originally design, construct, and thereafter maintain Interstate 20 in substantial compliance with then-existing engineering or design standards. It follows that there is no evidence to support the Croomses claim that a hydroplaning hazard on Interstate 20, which caused her to lose control of her vehicle and crash, was caused by the DOT's negligent failure to maintain the roadway in substantial conformance with its original design and construction. Assuming that Interstate 20, as originally designed and constructed, presented a known hydroplaning hazard at the location of Crooms's accident, the DOT remained immune pursuant to OCGA § 50-21-24 (10) from any claim that it negligently failed to take steps to make the roadway safer to eliminate the hazard. Because the Croomses failed to carry their burden to establish a waiver of the DOT's immunity, the trial court erred by finding the DOT was not immune and by denying the DOT's motion to dismiss the complaint.[2]

*Judgment reversed. Boggs, J., concurs. Doyle, P. J., concurs in the judgment only.*

---

[2] We need not address the DOT's additional enumerations of error contending on other grounds that the trial court was required to dismiss the complaint.

13